## DAVID CARROLL v. STATE.

No. A-3655.    Opinion Filed June 11, 1923.

(215 Pac. 797.)

(Syllabus.)

1    Indictment and Information—Amendment Changing Year Offense Committed Held not Prejudicial.    The original information charged the murder to have been committed on the 6th day of March, 1918.    After the trial had commenced the court permitted the county attorney to amend the information by changing the

year 1918 to 1919. Held, the amendment as to time was not of the essence of the offense, and the amendment in no way changed the issues to the prejudice of the defendant.

2.    Indictment and Information—In Information for Murder Permitting Change in Given Name of Deceased Held not Prejudicial. After the trial had commenced the county attorney was permitted to amend the information by changing the given name of the deceased from "Charley" to "Charles." Held, such amendment did not operate to the prejudice of the defendant. Under an allegation the given name as "Charley," proof of "Charles" is not a fatal variance, as "Charley" is a familiar nickname or substitute for "Charles," and is so understood generally.

3.    Homicide—Preliminary Inquiry as to Contents of Letter, a Copy of Which Was Excluded, Held not Prejudicial. Where the state endeavored to prove a threat by the defendant against the deceased included in a letter alleged to have been written by the defendant and received by the deceased, and, upon the failure of the state to produce the original letter or to identify the letter as the act of the defendant, although some proof was made of the loss of the original letter, the trial court excluded an alleged copy of the letter on objection by defendant's counsel, there was no ruling adverse to the defendant, and no evidence was admitted of which he can complain in this court.

4.    Witnesses—Cross-Examination as to Reputation of Accused as Law-Abiding Citizen—Acts of Violence Prior to Crime. On cross-examination of witnesses as to defendant's character and reputation as a peaceable and law-abiding citizen, it is proper to inquire as to knowledge of alleged acts of violence committed by the defendant at various times prior to the time of the killing on others than the deceased.

5.    Appeal and Error—Errors in Cross-Examination not Objected or Excepted to, and Answers Favorable to Defendant. Where it is contended that certain alleged cross-examination was improper, and the record discloses that answers to such alleged improper questions were favorable to the defendant, and that no objections were interposed or exceptions taken to such line of cross-examination, there is nothing for this court to review.

6.    Appeal and Error—Harmless Error—Incompetent Rebuttal Testimony. A judgment of conviction will not be reversed solely because of the admission of incompetent testimony in rebuttal unless it appears to this court, after an examination of the entire record, that the admission of such testimony has probably resulted in a miscarriage of justice or deprived the defendant of some constitutional or statutory right, to his prejudice.

7.      Appeal and Error—Scope of Review Where no Brief nor Argument. Assignments of error not supported in the brief by the citation of authority and argument, and presenting no fundamental error, will not be reviewed.

8.      Homicide—Evidence Sustaining Conviction of Manslaughter in First Degree. Evidence examined, and held sufficient to sustain the verdict and judgment.

Appeal from District Court, Craig County; A. C. Brewster, Judge.

David Carroll was convicted of manslaughter in the first degree, and he appeals. Affirmed.

William P. Thompson, for plaintiff in error.

George F. Short, Atty. Gen., for the State.

MATSON, P. J.   David Carroll, plaintiff in error, was on the 14th day of June, 1919, in the district court of Craig county, Okla., adjudged guilty of the crime of manslaughter in the first degree, and punishment assessed at imprisonment in the state penitentiary for a period of 10 years. The information charged the murder of one Charley Hayden, alleged to have occurred on the 6th day of March, 1919. Petition in error with case-made attached was filed in this court on November 15, 1919. In due course of time the cause was submitted, and is now before this court for review upon its merits.

The assignments of error will be considered in the order presented in the trial court.

After the defendant had pleaded not guilty, and had announced ready for trial, without interposing a demurrer to the information, the jury was impaneled, and the state placed its first witness upon the stand; counsel for the defendant then objected to the introduction of any evidence against the defendant upon the grounds that the trial court had no jurisdiction of the subject-matter of the offense, and that the in-

formation did not state facts sufficient to constitute a public offense. Thereupon the following proceedings were had:

"By Mr. Clark: The county attorney desires to amend.

"By the Court: The court permits the county attorney to amend to make it 1919, it clearly appearing that its intention couldn't be any other way. You didn't file any demurrer up to now and the court doesn't see that the circumstances or interest of the defendants will be hurt.

"By Mr. Davis: The defendants and each of them object and except to the holding, finding, and remarks of the court, and request the court to be heard on the motion at this point.

"By the Court: I will hear you, but that's the law.

"By Mr. Davis: The defendant objects and excepts to the ruling of the court, and also to the refusal of the court to hear it any further.

"By the Court: I am not refusing to hear you any further, and don't let any such thing as that go in the record; if you want to be heard I will hear you for two hours.

"By Mr. Davis: The defendants and each of them object 'and except to the court permitting the county attorney to amend this information as to the date, changing it from 1918 to 1919.

"By the Court: Exception allowed.

"By Mr. Davis: The defendants and each of them object to the amendment as made by the county attorney, changing the date from 1918 to 1919.

"By the Court: Overruled.

"By Mr. Davis: The defendants and each of them except. The defendants and each of them, being in jeopardy, object to being further tried for the reason that no copy of the information or list of witnesses have been served upon them on the present information.

"By the Court: Overruled.

"By Mr. Davis: The defendants and each of them except."

As we understand this assignment from the brief of defendant's counsel, the information as originally filed charged the crime to have been committed on the 6th day of March, 1918. The court permitted the information to be amended by changing the year 1918 to 1919. This amendment was immaterial, as time was not of the essence of the offense, and the amendment in no way changed the issues to the prejudice of defendant. The allegation in the original information was sufficient as to time, and no amendment was required to permit of proof that the crime was actually committed on the 6th day of March, 1919.

In this connection it is also contended that the trial court erred in permitting an additional amendment to be made to the original information after the trial had commenced by changing the given name of the deceased from "Charley" to "Charles." This amendment was permitted after the widow of the deceased, Hayden, had testified that he always signed his name "Charles." The amendment was equally as unnecessary as the change of dates. Under the allegation of the given name "Charley" proof of "Charles" would not have been a fatal variance. The names are identical, and so understood generally, "Charley" or "Charlie" being merely colloquial expressions for "Charles." Webster says "Charley" or "Charlie" are familiar nicknames or substitutes for Charles. Amendments of the character of these are clearly admissible "after plea on order of the court" under section 2512, Compiled Statutes 1921. As the amendments were not such as in any way changed the proof either as to date or as to the name of the deceased, there was no cause for delay of the

trial, and no error was committed in ordering the trial to proceed immediately after the making of these separate amendments.

The next errors assigned relate to the admission of alleged incompetent and immaterial testimony. These will be considered in the order presented in the brief of defendant's counsel. Under this assignment counsel have also grouped matters more properly referable to misconduct of counsel and improper cross-examination. All occurrences during the progress of the trial properly objected and excepted to and called to the trial court's attention in the motion for a new trial will be considered on appeal. We deem the arrangement of the errors assigned a matter of minor importance; the gist of the inquiry here is:

"Were the rulings of the trial court erroneous? If so, was defendant prejudicially affected thereby?"

The action of the trial court first complained of under this assignment is that counsel for the state was permitted to inquire about the contents of a certain letter supposed to have been written by defendant "without having introduced such letter or identified it or connected it with the defendant." The court's attention is not specifically called to all the pages of the record for support of this contention. After a careful examination we find the following proceedings applicable to this assignment:

In the direct examination of Sena Hayden, widow of the deceased, occurs the following:

"At this time I desire to submit this to opposing counsel and offer it. Q. Did you receive this letter, Mrs. Hayden, or did Mr. Hayden receive it while he was still alive? A. This is a copy of the one he received. Q. This is a copy? A. Yes, sir. Q. Do you know where the original is? A. I left it with Mr.

Roberts. Q. Examine that and see if that's not the original?
A. I am not sure. I think that's a copy, I copied it off. Q.
You copied the letter off that he received? A. Yes, sir. Q.
Did you copy it exactly? A. Yes, sir; spelling of the words
and all. Q. You turned the original over to Mr. Roberts? A.
Yes, sir.''

No further effort was made by the state, in presenting the
case in chief, to identify this letter as the act of defendant,
or to prove the loss of the original. When the defendant was
a witness the alleged copy of the letter was presented to him,
and he denied any knowledge of it. Thereafter, in rebuttal, the
state introduced Mr. L. L. Roberts, attorney prosecuting the
case, as a witness to prove the loss of the original letter, and
his testimony in that regard was as follows:

"Mr. Roberts, having been called as a witness for and
on behalf of the state, and having been heretofore duly sworn,
was examined by Mr. Clark and testified as follows, to wit:

"Q. State your name? A. L. L. Roberts. Q. Where do
you live? A. Vinita. Q. What's your business or profession?
A. I am an attorney. Q. Are you attorney in the case of State
v. David and Thara Carroll? A. I am. Q. Was a letter turned
over to you by Mrs. Hayden in this case? A. Yes, sir. Q. Have
you that copy with you? A. I have one that she says is a
copy.

"By Mr. Davis: The defendants and each of them objects
to this evidence. The state brought this out and it's not proper.

"By the Court: I think they have a right to show what be-
came of that letter. (Overruled.)

"By Mr. Davis: The defendants and each of them except.

"By Mr. Clark: Q. What became of that original letter?
A. I placed it in my drawer and later I gave it to Mr. Head-
rick, and he came back and turned the letter over to me, and I
couldn't find it this morning. Q. You haven't that letter now?
A. No, sir. Q. Haven't been able to get it? A. No, sir. Q.
You have made a diligent search for it? A. Yes, sir.

"That's all.

"By Mr. Thompson: That's all.

"By Mr. Davis: The defendants and each of them move to strike the testimony of the witness Roberts for the reason it is not rebuttal on any fact brought out on the part of the defendant, and for the further reason this letter was inquired of and by them at first, and therefore is incompetent, and Mrs. Hayden testified about it, and it is not competent, and we object as being incompetent, irrelevant, and immaterial and not proper rebuttal.

"By the Court: At this time I will overrule the objection.

"By Mr. Davis: The defendants and each of them except."

Thereafter the state introduced Mrs. Sena Hayden as a witness, and her testimony regarding this letter is as follows:

"Q. Is this a true and correct copy of the letter that you received through the mail and that you left with me?

"By Mr. Thompson: Objection. Incompetent, irrelevant, and immaterial, and not proper rebuttal. As I understand the testimony before, she said she didn't know who wrote that letter. For the further reason that the original hasn't been identified, no witness swore to who wrote it, and knows nothing about it.

"By the Court: The letter has never been identified, and couldn't be competent evidence.

"By Mr. Roberts: That's all.

"By Mr. Thompson: That's all."

From the foregoing and other parts of the record it is apparent that the state endeavored to prove a threat by the defendant against the deceased which was included in a letter alleged to have been written by the defendant and received by the deceased. Upon the failure of the state to produce the original letter or to identify the letter as the act of the defend-

ant, although some proof was made of the loss of the original letter, the court very properly excluded this testimony on objection by defendant's counsel. In this respect there was no ruling adverse to the defendant, and no evidence was admitted of which he can complain in this court. Further, it is contended that certain improper questions were permitted to be asked of some of the defendant's character witnesses. The defendant placed his reputation as a peaceable, law-abiding citizen in issue, and introduced numerous witnesses who swore that they knew defendant's reputation therefor, and that it was good. Some of these witnesses were asked if they had heard of certain alleged acts of violence committed by the defendant at various times prior to the time of this killing on other than the deceased. The record discloses that these questions were asked without objection by defendant's counsel, that the answers were all in the negative, and for such reason nothing occurred in this respect during the progress of the trial that this court can review. In this instance, however, we deem the questions asked proper on cross-examination of character witnesses. Stouse et al. v. State, 6 Okla. Cr. 415, 119 Pac. 271; Pope v. State, 15 Okla. Cr. 162, 175 Pac. 727; Jones v. State, 17 Okla. Cr. 561, 190 Pac. 887.

Attention is next called to certain alleged improper cross-examination of the defendant. In regard to these matters the brief contains the following:

"And that he persisted in asking on cross-examination the plaintiff in error, himself, about whether he hadn't had trouble with Oll Hill, one of the witnesses for the state, and if he didn't tell Mr. Palmer that he had a gun and knife for the purpose of skinning a duck, but, he was going to see that Oll Hill kept his stock up; also asked him about the letter and the contents of the letter, and over the objection and exception of plaintiff in error L. L. Roberts asked Tom Palmer if in a con-

versation the defendant, Carroll, had said 'that he took his gun and knife to skin some ducks, but he was going to make Oll Hill keep his stock off the place.' "

The record is as follows:

"Q. Do you remember having a little trouble along in September with Mr. Oll Hill over some cattle getting out on your place? A. Yes; I remember going to Mr. Hill. Q. Do you remember at that time telling Mr. Palmer that you told the boys you met that you had a gun and a knife for the purpose of skinning a duck but you was going to see that Oll kept his stock up? A. No, sir. Q. Didn't have that conversation? A. No, sir. Q. Carroll, didn't you write a letter to Charley Hayden addressed to him in which you told him that if he didn't get off that place and let the land alone that he would fall at an unknown hour at your hands? A. No, sir; I never did write such a letter in my life. I can prove that wasn't my handwriting. Q. Was there anybody living at White Oak or anywhere else that you know of that was interested in that little patch of ground Hayden was pasturing besides yourself? A. I don't know anybody living close to Vinita. Q. Is this your letter that I have here? Did you ever see a letter which is a copy of that?

"By Mr. Thompson: We object to this. They should confront him with the original if they have got it, and for the further reason that the testimony shows that the original was turned over to Mr. Roberts. This is the defendant, and he is entitled to be confronted with the letter. We object even to offering this copy of this letter without they have the original testimony showing that Roberts had the original or that's the original.

"By the Court: Sustained.

"By Mr. Thompson: I object to him even intimating to the witness about any copy, and ask that the jury be admonished that they are not to consider it.

"By the Court: Sustained. Gentlemen, you will not consider this testimony about this letter that was shown to the witness. It is not competent in this case."

All of the questions concerning the trouble with Oll Hill were propounded and answered without objection or motion to strike the answers. The answers were favorable to the defendant, and, as no objection was interposed or exception taken to this line of cross-examination, no action of the trial court is brought before us for review. Price v. Territory, 1 Okla. Cr. 508, 99 Pac. 157; Stack et al. v. State, 4 Okla. Cr. 1, 109 Pac. 126; Dooling et al. v. State, 3 Okla. Cr. 491, 106 Pac. 982.

On motion of defendant's counsel the trial court excluded all the testimony regarding the letter alleged to have been written by defendant to deceased, and admonished the jury not to consider it. We think this action on the part of the court very favorable to defendant. It was competent to ask defendant if he had not made threats against the deceased where self-defense was pleaded, and this is true whether such threats were written or oral. The defendant having denied the alleged written threat, the court's action in excluding the purported copy of the letter containing it, without proper predicate having been laid for the introduction of the copy, was correct. But in this case it was entirely proper for the state to cross-examine the defendant in regard to this alleged written threat, and to impeach him thereon, provided the writing of the original letter could have been proved as the act of defendant. The trial court fully protected the rights of the defendant in the ruling made.

Counsel also complains of the action of the trial court in permitting the witness G. H. Cunningham to testify in rebuttal about a difficulty between the defendant and one Charley Kibbett occurring in 1915. It is contended that this line of examination was over the objection of defendant. The record does not sustain this contention. The entire examination was without objection, except on one occasion counsel for de-

fendant requested the court to strike an answer, which request was promptly sustained. We find, therefore, no ruling of the trial court adverse to defendant in respect to this assignment of error.

It is also contended that the witness "Charley Rex Winkle" was allowed over the objection and exception of defendant, to testify (in rebuttal) about a conversation with Carroll (defendant) that he had his gun loaded to kill Oll Hill. This testimony was partially competent and partially incompetent. The alleged conversation took place in September before the homicide in the spring following. The defendant, as a witness in his own behalf, had testified that the shotgun he carried at the time he shot Hayden did not belong to him, but that it belonged to Mrs. Faulkner, into whose house he had moved in October prior to the killing. Also he had testified that he had purchased the pistol only a short time before the killing. It was competent on rebuttal, proper predicate having been laid in the cross-examination of defendant to show that he had made contradictory statements to those testified to by him concerning guns, in which statement made in September he was talking about "his loaded gun."

The additional portion of the question relative to the threat of defendant to "kill Oll Hill" was incompetent, and the court should have sustained the objection of defendant's counsel to the question as asked. But this court is not authorized to reverse a judgment of conviction unless there has been a miscarriage of justice, or else defendant has been deprived of a constitutional or statutory right. Section 2822, Compiled Statutes 1921.

If the testimony of defendant and that of his codefendant and son, Thara Carroll, disclosed any real or apparent necessity

for the use of a deadly weapon in defense of the alleged assault contended by them to have been made by the deceased on this defendant, the admission of this evidence alone could be regarded as sufficient ground for reversal of this judgment; but standing as it does, the single assignment of error possessing, as we view this record, any substantial merit, the court does not regard it sufficient ground for reversal where no apparent miscarriage of justice resulted in the conviction of this defendant of manslaughter.

Attention is called to other matters occuring during the progress of the trial which counsel in the brief filed contend were prejudicially erroneous to the substantial rights of this defendant.

The assignments heretofore discussed in this opinion were supported in the brief by the citation of authority tending to sustain the position taken, and by argument in addition thereto complying with the rules of this court; but this record is very voluminous, containing approximately 400 pages of typewritten matter, and this court, with only three members, and an average of 325 appeals per annum cannot undertake to review alleged errors not supported by argument and the citation of authority as required by rule 7 (12 Okla. Cr. viii, 165 Pac. x). As to grounds for reversal not directly passed upon in this opinion, it is sufficient to state that an examination of the record discloses that they are without merit as affecting prejudicially the substantial rights of defendant.

We proceed in conclusion to consider what counsel contend to be the most serious error in the record, to wit, the refusal of the trial court to instruct a verdict of not guilty and in overruling the motion for a new trial, both because of the insufficiency of the evidence. When the state concluded its

case in chief there was evidence sufficient to authorize the submission of defendant's guilt to the jury. There were no other eyewitnesses to the killing except defendant and his son, Thara, who was jointly informed against and tried with him. Thara was acquitted. The killing occurred on premises owned by defendant, a part of which was being occupied by deceased, the scene of the transaction being about 150 yards distance from the house occupied by deceased. Immediately after the shooting deceased walked to his house, and there made certain statements to his wife (which statements were admitted in evidence as dying declarations, and properly so admitted) to the effect that this defendant had shot him and had called him "a son of a bitch." Mrs. Hayden also testified that she was in the house, heard a disturbance, went out, and saw her husband coming toward the house, and defendants leaving the scene of the difficulty; that old man Carroll was about 60 feet south of the fence where the shooting occurred, and that Thara was about halfway between the fence and his father; that Thara was carrying a shotgun at the time. Further Mrs. Hayden testified that deceased, when he reached the house, was suffering with a gunshot wound, evidently a pistol wound, through his body, and that deceased said he was going to die, and did die within five minutes after he reached home; that this occurred in Craig county, Okla., on March 6, 1919.

Another witness for the state testified that shortly after the shooting this defendant, in a conversation with witness, admitted the shooting of deceased, stating certain acts by deceased which defendant claimed justified his conduct.

We think, therefore, that the facts and circumstances in evidence at the conclusion of the state's case were amply sufficient to require the submission of defendant's guilt of either murder or manslaughter to the jury, and that the refusal of

the court to advise a verdict of not guilty was not erroneous. That defendant should have been granted a new trial because of the insufficiency of the evidence as a whole is, we think, equally without merit. While the testimony of the defendant, if believed, tended to establish a killing in defense of his person, his conduct both immediately prior to the shooting and at the time thereof cannot be justified without doing violence to those well-settled rules and statutes which point the duty of one engaged in a quarrel to avoid the necessity of an attack if in his power, and at most to use only such force as was necessary to prevent injury to himself at the time.

Defendant, armed both with a shotgun and pistol, sought deceased, who at most was simply a trespasser on defendant's land, and, even if defendant's statement is true that deceased said, " 'If you will lay down that gun I will beat hell out of you,' and about that time started running toward me with a piece of log chain," and that when deceased started to throw rocks at him he (defendant) commenced shooting, with a barbed wire fence 45 inches high between them at the time, there is such slight evidence of necessity to use a deadly weapon under such circumstances and such apparent ability to avoid taking human life that defendant should consider himself extremely fortunate that, because of the zeal and ability displayed by eminent counsel, he was only convicted of the crime of manslaughter.

After a careful examination of the entire record the conclusion is reached that defendant was accorded a fair trial by an impartial jury and that the errors complained of were not such as to authorize a reversal of this judgment under the statutes of this state.

Judgment affirmed.

DOYLE and BESSEY, JJ., concur.