**William SUGGS, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17428.**

Court of Criminal Appeals of Oklahoma.

May 4, 1973.

Kienzle, Hicks & Jay, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., Charles R. Lane, Asst. Dist. Atty., for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, William Suggs, Jr., hereinafter referred to as defendant, was charged by information in the District Court of

Pottawatomie County, Oklahoma. Defendant was subsequently tried before a jury and convicted for the lesser included offense of First Degree Manslaughter. His punishment was fixed at four (4) years in the State Penitentiary, and from said judgment and sentence, a timely appeal has been perfected to this Court.

Due to the nature of the propositions of error urged by defendant in his brief, only a concise statement of the facts is presented here.

Mr. Fay Red testified that he and defendant had gone for a ride in defendant's car around 11:00 p. m. on March 18, 1971. Defendant parked his car behind another across the street from a cafe and a barber shop located on the ground floor of the Suggs Hotel in Shawnee, Oklahoma. The barber shop was owned by defendant who lived in the back of the shop. While they sat in the car, James Hester Miller, hereinafter referred to as the victim, parked his car so close behind defendant's car, that he could not get his car out. Upon request, the victim would not move his car. Red and the victim went inside the cafe and defendant followed, again asking the victim to move his car. The victim refused and defendant left the cafe. Red then testified that he heard defendant unlock the front door of the adjacent barber shop and shut it a few seconds later. The victim then went to the front door of the cafe and started to open it and Red heard a shot from outside and observed the victim fall back through the door onto the cafe floor.

Lewis Odell Moody testified that he was inside the cafe when the victim came in for a few minutes. Moody then observed the victim start back out the front door and heard a shot. The victim fell back onto the cafe floor.

Leslie Dean Wright, whose testimony was read into the record from the transcript of the preliminary hearing, testified that he heard defendant and the victim arguing on the common front porch. The victim had opened the front door of the cafe and started back in when Wright heard a shot and saw defendant standing in the front yard with a gun in his hand. Wright had overheard the victim threaten defendant, making the statement, "Come on out and fight, because if you don't, I'm going to get you anyway, when I catch you without your weapon." The victim then took his hand out of his pocket and reached for the door at which time, Wright heard a shot. Wright did not go outside himself, but he heard defendant ask someone to take him to the police or to a lawyer.

Other State witnesses testified that the body was found inside the cafe door; that a small pattern of shot holes was found in the front screen door; and that there was a .410 shotgun shell laying in the front yard. A medical expert testified that in his opinion, the victim died of a gunshot blast in the left arm, chest, neck, heart and lung. He further testified that in his opinion, the shot came from the left side of the victim as he was turning away from defendant.

Defendant testified in his own behalf and admitted shooting the victim. He further testified that he and the victim had an argument concerning the parked cars and that the victim had become belligerent, using abusive language. Defendant then went to his barber shop and residence, and the victim went to the cafe. A short time after defendant had returned to his shop, the victim left the cafe and started pounding on defendant's door. The victim made threats, and defendant got his .410 shotgun and went out on the porch. Defendant testified that he asked the victim to leave him alone. However, the victim continued to use abusive and threatening language; and when the victim made what defendant thought to be a threatening motion, defendant fired the gun. Defendant further testified that prior to the shooting, he was acquainted with the victim's reputation in the community for being violent, quarrelsome person who had beaten up several persons.

Defendant then put on numerous witnesses who testified that defendant had a reputation for being a peace-loving, honest and non-violent person. The State, in cross-examination, questioned certain of these witnesses concerning their knowledge of a prior arrest of defendant for carrying a concealed weapon.

■ Defendant first contends that the trial court erred in admitting certain pictures of the body of the deceased and his jacket as a portion of the State's rebuttal. With this contention, we do not agree.

This Court has held on numerous occasions that the admissibility of photographs of a homicide victim taken subsequent to the homicide is left largely to the discretion of the trial court, and unless there is an abuse of discretion, the admission of said photographs into evidence will not be a cause for reversal. In the case of Ashton v. State, Okl.Cr., 478 P.2d 932, this Court in citing Pate v. State, Okl.Cr., 361 P.2d 1086, held as follows:

" '8. When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places.

"9. Although it is error to receive in evidence gruesome photographs of a homicide victim, designed primarily to arouse the passion of the jury, such photographs are admissible; when they are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant.' "

The photographs in question show the victim's body at the funeral home and were taken with particular emphasis upon the gunshot wounds in the area of his left shoulder and chest. No autopsy surgery had been undertaken, and the pictures were not gruesome. The pictures were of probative value since they tended to reflect the position of the victim with reference to the direction of fire at the instant the victim was shot. The above is also true with respect to the admission of the victim's jacket.

The State tried to introduce the exhibits into evidence during the State's case in chief, and the trial court would not allow same. Therefore, defendant argues that the trial court should not have allowed the introduction of same on rebuttal, since it was new evidence and was intended to build the State's original case. With this argument, we do not agree. The exhibits were admissible on rebuttal after defendant's testimony tended to raise the defense of self-defense. Therefore, we find defendant's first proposition to be without merit.

■ Defendant's second proposition urges that the trial court erred in not granting defendant's application to allow the jury to view the scene of the crime. Title 22 O.S. § 851, states as follows:

"When, in the opinion of the court, it is proper that the jury should view the place in which the offense was charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted in a body, in the custody of proper officers, to the place, * * *."

The case of Hill v. State, 78 Okl.Cr. 384, 148 P.2d 992, holds in the third paragraph of the syllabus that:

"The question of permitting the jury to personally examine the premises is one primarily within the discretion of the trial court, the same to be considered from all the facts and circumstances, and case will not be reversed in the absence of an abuse of this discretion."

In the instant case, pictures and diagrams were introduced into evidence to familiarize the jury with the scene of the crime as it appeared on the date of the incident. The record reflects no issues of fact which would have been clarified by such a view. Defendant argues that the jury would have been in a position to view

the door of defendant's residence which would reflect an attempted forcible entry. However, the State introduced the screen door of the cafe into evidence and defendant could have followed the same procedure with respect to his door if he so desires. Also, a period of approximately six months had passed since the incident. Therefore, we find that the trial court did not abuse its discretion and defendant's second proposition is without merit.

▮ Defendant next contends that the trial court erred in allowing the State to ask questions of defendant's character witnesses concerning a previous arrest of defendant. In Lowrey v. State, 87 Okl.Cr., 313, 197 P.2d 637, this Court in paragraph two of the syllabus held as follows:

"In the cross examination of a witness called to testify to the defendant's good reputation as a good, peaceable and law-abiding citizen, it is permissible to ask the witness on cross examination if he had heard of various specific acts of the defendant inconsistent with such reputation, but it is improper for the cross examiner to inquire of a witness concerning alleged acts of the defendant which are creatures of the examiner's imagination and which did not occur, for the purpose of leaving the impression with the jury that his reputation is bad."

In the *Lowrey* case, the defendant offered character witnesses who testified as to defendant being a good, peaceful and law-abiding citizen. This Court held that it was proper on cross-examination to permit inquiry of said witnesses if they had heard that the defendant had been arrested for being drunk. Also, see Miller v. State, Okl.Cr., 418 P.2d 220.

In the instant case, there is no suggestion in the record that the prosecutor was acting in bad faith. Defendant on cross-examination admitted that he had been arrested. Therefore, we find the defendant's third proposition without merit.

▮ Defendant's next proposition in error urges that the trial court erred in granting the State's Motion in Limine requesting the trial court to order defendant and defendant's counsel not to mention, refer to, or interrogate concerning the general reputation of the victim or specific acts of violence of the victim until such time as evidence on behalf of either the State or defendant raised the issue of self-defense. An examination of the record reflects that although the Motion in Limine was sustained by the trial court, the trial court allowed defendant to raise the issue of his knowledge of the victim's reputation for violence and the victim's past violent acts. Therefore, the question is moot, and defendant's fourth proposition of error is without merit.

▮ Defendant last contends that the trial court erred in refusing to give the eight requested instructions submitted by defense counsel. An examination of the record reflects that the trial court adequately and properly instructed the jury. Defendant in his brief makes no argument and cites no authority other than to state that the instructions were taken from cases more than forty years old and were couched in outdated language. We find no merit in this argument and further find that defendant has been deprived of no fundamental rights.

▮ This Court has held many times that it is necessary for defense counsel not only to assert error, but to support his contentions by both arguments and citations of authority. Where this is not done and it is apparent that no fundamental error has occurred, this Court will not search the books for authority to support the mere assertion that the trial court erred. Fryar v. State, Okl.Cr., 385 P.2d 818. Defendant's last contention is, therefore, without merit.

From a consideration of the record as a whole, we do not find that defendant has been deprived of any substantial rights, but that the issues were fairly presented to a jury, and that defendant received a fair and impartial trial. The verdict and judgment appealed from, is, accordingly, affirmed.