# TAYLOR v. STATE.

No. A-11635.   Aug. 6, 1952.

Rehearing Denied Sept. 10, 1952.

(247 P. 2d 749.)

Judd L. Black, O. P. Estes, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, J. Edgar Thornton Taylor, referred to here as defendant, as in the lower court, was charged by information filed in the district court of Oklahoma county with the crime of murder. The jury returned a verdict of second degree manslaughter, and left the punishment to be fixed by the trial court, who sentenced defendant to three years imprisonment in the State Penitentiary. Appeal has been duly perfected to this court.

There is no complaint as to the sufficiency of the evidence to sustain the conviction of defendant of second degree manslaughter, with sentence of three years in the penitentiary. There is ample evidence in the record to have supported a conviction of murder, as charged, had the jury fully believed the testimony given by the witnesses for the state. But the problem was not easy or simple for the jury, or for the court in fixing sentence.

Defendant operated a beer parlor and was an accessory in bootlegging whiskey in the suburbs of Oklahoma City known as "Mulligan Flats", and this place and his home appear to have been the rendezvous for ex-convicts, prostitutes, thieves, bootleggers and various and sundry shady characters. The deceased had a long record of convictions for various crimes and at the time of his death was an escapee from jail and a fugitive, having felony prosecutions pending against him in Oklahoma and Texas. Still, defendant feels that he should not pay any penalty for the killing. And above everything, if it develops from the record, even though the grounds interposed may be said to be technical, that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right, relief must be granted.

For reversal counsel interpose and argue two propositions, and being:

"Proposition I: It is jurisdictional that the statutory provisions be complied with in instituting and prosecuting a criminal action.

"Proposition II: It is error to admit evidence of the commission of another crime which forms no part of the res gestae in the case."

Considering the first proposition, a chronological history of the proceedings in institution and prosecution is required.

It appears that the prosecution was commenced by the filing of a preliminary information in the justice court of Elmo McCallister, in which it was charged that the defendant did commit the crime of murder by fatally shooting one Terrell Baxter Meshew in Oklahoma county.

Thereafter, and on October 13, 1950, a preliminary hearing was held, at the conclusion of which the justice of the peace ordered the defendant held to answer in the district court for the crime of murder, and denied bond for de-

fendant. This court, in Ex parte Taylor, 93 Okla. Cr. 25, 224 P. 2d 611, held that defendant was entitled to bail in the sum of $20,000.

Following the preliminary hearing and on October 17, 1950, the state filed an information in the district court of Oklahoma county in which defendant was charged with the crime of murder alleging that defendant unlawfully shot and killed Terrell Baxter Meshew.

On October 23, 1950, the defendant filed a motion to quash and dismiss, asserting that the proof was wholly insufficient to charge him with the offense and to hold him to answer the charge of murder, and alleging that the proof failed to show such crime was in fact ever committed within the jurisdiction of the court and that there was probable cause to believe the defendant guilty thereof. Attached to this motion was a certified copy of the testimony which had been offered at the preliminary. Following a hearing on the motion on November 3, 1950, the clerk's minutes show that entry was made as follows:

"Ent. Comes on for hearing on def.'s Motion to Quash and Dismiss. Deft. present and by counsel. Motion overruled. Case remanded to Justice Elmo McCallister for taking of additional testimony as to cause of death of Terrell Baxter Meshew (Morris)."

The district judge, Glen O. Morris, thereafter signed a journal entry reflecting his action, which was filed in the case on November 6, 1950. It reflected the above minute, setting out in part:

"* * * the court finds that said motion to quash and dismiss should not be sustained, but the said cause should be remanded to said justice court for additional testimony concerning cause of death of Terrell Baxter Meshew, * * *. It is further ordered that said cause be and the same is hereby remanded to the Justice of the Peace Court of Elmo McCallister for the taking of additional testimony concerning the cause of the death of Terrell Baxter Meshew, after which, on sufficient showing to said Justice of the Peace, said cause shall be returned to this court under present style and number, and defendant shall be again arraigned in this court."

The orderly consideration of the points raised under the propositions interposed and heretofore set out, indicates that we consider the validity of each step taken (and here claimed to be erroneous) as taken. So at this point we shall study the evidence introduced by the state at the preliminary hearing, mentioned above, and held on October 13, 1950.

Claris Lee Tilton, alias Claris Lee Burns, who testified to being an eyewitness to the shooting, testified to the shooting taking place in Oklahoma county in the home of the defendant, who was shown to have been for several days harboring an assortment of friends in his home, in the absence of his wife. There had been considerable drinking of whiskey by the parties, and the shooting occurred in the early morning hours of September 28, 1950. Testifying to the facts of the shooting, witness was asked and answered as follows:

"Q. (By Mr. Holbird) What was done next? A. We had got into the front room to get into the car to go down to my mother's. Q. What happened then? A. Ed [the defendant] called Smokey [deceased] back, and said, 'Smokey, come here.' Smokey turned around in the front room, walked back to the foot of the bed. Q. To the foot of the bed? A. Yes. Q. Where was Ed at that time? A. He was standing by the table in the kitchen. Q. In the kitchen? A. Yes. Q. Is that near the door? A. Yes. Q. Did you see Ed standing in there in the door? A. Yes, sir. Q. What took place when he went back there? A. Smokey turned around, walked to the foot of the bed, and Ed was standing at the end of the table, and when Smokey came back there and stood in the door, he said, 'You are a thieving son of a bitch.' Q. Then what? A. 'You stole my whiskey.'

4

I said, 'If he got a pint of your whiskey I will pay you.' By the time I started to reach in my slack pocket to get the money, Ed shot him. * * * Q. Did you observe any wounds on his body? A. I could see the blood. Q. Where was it? A. Along in here (indicating). Q. Along in his stomach? A. Yes. * ** *"

Wayne Harbolt, a police officer, testified as follows:

"Q. Did you see the body of Smokey Meshew? A. Yes. Q. About when did you see it? A. I saw it in the emergency room of St. Anthony Hospital about 5:30 or 6:00 A.M., on September 28, I guess it was. Q. Did you see any wounds on his body? A. Yes, one. Q. Where was it? A. In the abdomen. Q. Could you, from your experience as a police officer, tell what caused that wound? A. I would say it was a bullet wound. Q. Was he alive or dead then? A. He was dead."

The inquiry at this point is whether or not the above evidence shows that one Terrell Baxter Meshew was killed, and within the jurisdiction of the court, and probable cause to believe defendant guilty thereof. Such evidence need not be sufficient to support a conviction. Tit. 22 O.S. 1951 §§ 171, 264; Lyon v. State, 55 Okla. Cr. 226, 28 P. 2d 598; Ex parte Orton, 75 Okla. Cr. 97, 128 P. 2d 1025. A preliminary examination before magistrate on felony charge is not a "trial". Const. Art II, § 17; Tit. 22 O.S. 1951 § 262; McCurdy v. State, 39 Okla. Cr. 310, 264 P. 925; State v. Harris, 44 Okla. Cr. 116, 279 P. 925: Osborn v. State, 86 Okla. Cr. 259, 194 P. 2d 176.

Applying the principle set out to the evidence adduced, we find that there was evidence that Terrell Baxter Meshew died and that he came to his death by reason of gun shot wounds, and that defendant inflicted such wounds, so that the order of the district court of Oklahoma county made on October 13, 1950, overruling defendant's motion to quash and dismiss was justified and supported by the transcript of the evidence taken at preliminary hearing.

But the minutes and order entered, and heretofore quoted, did contain an unusual clause, and as contended by counsel for defendant, not provided for by law; that is, the clause remanding the case back to the examining magistrate for the purpose of hearing further evidence concerning the cause of the death of deceased.

The transcript discloses that the assistant county attorney, Mr. Holbird, called as a witness to identify the wounds on the body of the deceased as being bullet wounds, Dr. Allen Henry Bunch, an intern at St. Anthony Hospital, Oklahoma City, who had not yet been licensed to practice medicine. It is apparent that the attorney had not questioned this doctor prior to calling him to the witness stand. The intern saw a dead man at the hospital on the morning of September 28, 1950, but was not sure of the identity of the body, or whether or not the deceased had suffered gunshot wounds. His testimony was of no value whatever. However, from other evidence we have recited, the testimony of this witness was not necessary for the purpose of the preliminary.

The examining magistrate, as directed by Judge Morris, did conduct a further hearing, however, on November 29, 1950, and further testimony was heard from J. M. Swofford, police officer, who took pictures of the deceased at the morgue, showing wounds on his body identified by J. C. Roberts, coroner, as bullet wounds. All papers were returned to the district court by the magistrate, and on December 7, 1950, the defendant filed a second motion to quash and dismiss, in which it is alleged that the court on November 3, 1950, had found as a fact that the preliminary hearing on October 13, 1950, was insufficient to cause the defendant to be bound over to the district court. The record does not support this statement. The court, on December 22, 1950, overruled this second motion to dismiss and set the arraignment for December 29, 1950. On December 29, 1950, defendant filed a

demurrer setting up grounds similar to the grounds in the motion of December 7, heard on December 22. The demurrer was overruled on the same day filed, and defendant was duly arraigned and entered a plea of not guilty.

Counsel complain that no order was issued directing further prosecution of defendant after the November 3 hearing in the district court; that under Tit. 22 O. S. 1951 § 510, it was necessary for the state to file a new preliminary information, and under § 500 of said Title a new information should have been filed in the district court; that the procedure conducted was contrary to and in violation of the Oklahoma Constitution, Art. II, § 17, which provides that no person shall be prosecuted for a felony without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination.

Other matters in the procedure are complained of not necessary to be recited because the record here is conclusive that the trial court did not find the evidence at the preliminary hearing insufficient to cause the defendant to be bound over. The defendant might properly have argued that the effect of the procedure was to so hold in spite of the minutes and order, but this court is governed by the language and wording of the minutes of the court and the order heretofore quoted.

The additional hearing by the examining magistrate added nothing to the case. If there was sufficient evidence in the first instance to bind the defendant, and we have so found, and the trial court so found by overruling the motion to quash, then the second hearing was surplusage and unnecessary. Canard v. State, 2 Okla. Cr. 505, 103 P. 737, Williams v. State, 6 Okla. Cr. 373, 118, P. 1006; Wyatt v. State, 69 Okla. Cr. 93, 100 P. 2d 283.

Counsel for defendant would be correct in their contentions if the court had sustained the motion to quash. The court, of course, should either have sustained the motion to quash and caused the county attorney to start all over, or on overruling the motion have proceeded to set a date for arraignment of the prisoner and proceeded on from there.

But do the erroneous proceedings set out and held to be unnecessary and surplusage require a reversal of this case? We think not, as such error, we conclude from a study of the entire record, did not result in a miscarriage of justice, or constitute a substantial violation of a constitutional or statutory right. See Tit. 22 O.S. 1951 § 1068, which was in effect at time of trial as Tit. 22 O. S. 1941 § 1068.

Defendant in treatment of his Proposition II, where he states "It is error to admit evidence of the commission of another crime which forms no part of the res gestae in the case", states:

"The court, time after time, permitted the plaintiff to establish, over the objection of the defendant, that the defendant had committed specific and distinct offenses which were clearly no part of the res gestae of the murder charge for which the defendant was upon trial, neither did these offenses come within any of the well known exceptions."

The latter part of the statement quoted is rather reckless as to facts, in view of the record in this case, and which should become evident after summary and quotations from the factual matters presently to be made. But at this point we would consider the law urged by counsel that they seek to have applied in this case. First is cited the case of Martin v. State, 29 Okla. Cr. 136, 232 P. 966, 967, announcing a rule of law that it is urged should be applied in this case, and being that:

"In the trial of a criminal case the issue is singular and is based upon the question, 'Did the defendant commit the crime charged?' and not upon the question, 'Has the defendant the reputation of having committed the crime charged, or some similar crime?'"

6

Reading that case it will be found that the defendant did not testify and neither did he place his character in issue. He was charged with conveying intoxicating liquor. The court said in that case:

"Where a defendant is on trial for a specific offense, evidence of unrelated offenses is not admissible, unless relevant to the issue and tending to show motive or interest; and an unlawful intent is not an ingredient of the offense of unlawfully conveying intoxicating liquors."

Counsel state that other cases from this court supporting their position are: Todd v. State, 30 Okla. Cr. 410, 236 P. 437; Pitcher v. State, 32 Okla. Cr. 322, 241 P. 199; Phillips v. State, 20 Okla. Cr. 415, 203 P. 902; and Frazier v. State, 31 Okla. Cr. 322, 239 P. 186.

A reading of these cases discloses that in none of them did the defendant place his character in issue by introducing evidence of his good character. For such reason the cases cited are not applicable here.

In the within case the record discloses that the defendant offered a number of witnesses who testified that Terrell Baxter (Smokey) Meshew had the reputation of being a dangerous, quarrelsome and violent person. One Daisy May Mason testified that she told the defendant, "You had better watch Smokey" because she stated that while in defendant's tavern on the night of September 27, 1950, she heard the deceased tell Claris Tilton to keep feeding the whiskey to "Trotter", that "they were going to take it."

Defendant offered in evidence his motion for continuance, which among other things alleged that one Thomas J. McAlester, if present, would testify that the deceased told him immediately prior to the homicide that he was going to rob the defendant.

Fred N. Ward identified a document purporting to be a record of arrests and convictions of the deceased, showing 24 entries. This was admitted in evidence for the consideration of the jury.

After thus attempting to try the deceased for his shortcomings, defendant tried to picture himself in contrast as a paragon of virtue; that is, that his own reputation and character as being a peaceable and law-abiding citizen was good. Four witnesses so testified. And one of them, J. F. Marrow, being recalled by the state, was cross-examined with reference to certain incidents in which the defendant had been involved, and testified that he did not know about those incidents, and that if he had known about these two incidents his testimony covering the defendant's reputation would have been different.

After the defendant attempted to show by witnesses that the deceased had a bad character and reputation, and after defendant had placed his own character and reputation in issue by producing witnesses to show that it was good, he testified in his own behalf.

The evidence had shown that a silver plated pistol was found on the floor of the bedroom in defendant's home, where deceased had been visiting, which pistol was the property of the defendant, and which deceased had attempted to repair for the defendant, but which was shown to be useless. Counsel particularly complains of the following cross-examination of the defendant:

"Q. (By Mr. Wilson, Assistant County Attorney) Isn't it a fact, Mr. Taylor, that you broke that gun or pistol, pistol-whipping a fellow by the name of Jimmie Trotter? Mr. Black: Now, may it please the court, we object to that. He is not on trial for what he did to an ex-convict for robbing him. He is on trial for shooting Smokey Meshew. That is not an issue. Mr. Wilson: His reputation as a peaceful, law-abidng citizen has been placed in issue by this defend-

ant and it is proper cross-examination. Mr. Black: He is accusing this man of doing something to this ex-convict. The Court: All right, objection is overruled and exception. Mr. Black: Save our exception. Q. (Mr. Wilson) Isn't that true, that you broke that gun pistol-whipping Jimmie Trotter? Yes or no. A, Over stealing the money. Q. I don't care about what over, isn't that true? A. Right. Q. That is correct? A. I don't know whether I broke it there at that time or not. Q. When did you do that? A. On Sunday morning. Q. On Sunday morning? A. Well, it was about 12 o'clock. It might be evening or might be morning. It is awful close, Sunday morning, or Sunday evening. * * * Q. Have you ever been convicted of a crime? A. Well, I never have been in the penitentiary for crime. Q. I am not talking about a penitentiary crime. Mr. Black: We object to that as incompetent, irrelevant and immaterial. A. I was never convicted of a felony. Mr. Black: I am objecting to that. The Court: Overruled, and exception. Mr. Black: Note our exception. Q. Have you ever been convicted of a crime? A. I plead guilty after a fellow run in the house, in the beer joint with a crank, with a car crank and was going to knock a fellow in the head, and knocked him in the head with a bottle. I plead guilty to that. * * * Q. Did you ever fire that gun at Oscar Junion Johnson? A. I did. Mr. Black: Comes now the defendant and objects to all this line of testimony, and particularly this question, as being incompetent, irrelevant and immaterial, trying to show some other offense in this case not connected in any manner with this charge and it is highly prejudicial. The Court: It is not for that purpose, as I understand it. Overruled and exception. Mr. Black: Exception. Q. Did you ever fire that gun at Oscar Junion Johnson? A. I did. Q. When? A. Oh, a year or two before this other. Q. What was the occasion for your firing at him? A. He was in the chicken house, him and Audry Jacks. Q. Audry Jackson? A. Audry Jack. Mr. Black: We move that all this be stricken because it has— A. I didn't fire at him. Mr. Black: It has no connection with the fatal difficulty. The Court: Not introduced for that purpose. It goes to the credibility of the witness and rebuttal to some testimony on behalf of the defendant. Mr. Black: Exception."

From the above we see that the court permitted the cross-examination of defendant's character witnesses and the defendant as to specific acts of misconduct on the part of the defendant because the defendant had placed his character in issue, and for the limited purpose of testing the credibility of such witnesses, and not for the purpose of establishing the truth of the evidence, but, as stated, to test the credibility of the witnesses and to ascertain what weight or value was to be given to the testimony. Long v. State, 61 Okla. Cr. 274, 67 P. 2d 980; Stouse v. State, 6 Okla. Cr. 415, 119 P. 271, 275; Pope v. State, 15 Okla. Cr. 162, 175 P. 727; Russell v. State, 17 Okla. Cr. 164, 194 P. 242; Jones v. State, 17 Okla. Cr. 561, 190 P. 887, 14 L.R.A.,N.S., 739, note.

The within case is readily distinguishable from the cases where the prosecution, in effort to convict, was relying in its case in chief upon the evidence of similar crimes to that with which the accused was then charged. Here it is clear that the only purpose of the state in its cross-examination was to impeach the credibility of the witnesses who testified to the good character of the defendant.

In the case of Henderson v. State, 59 Okla. Cr. 86, 56 P. 2d 915, this court, in the third paragraph of the syllabus, said:

"On cross-examination of witnesses as to defendant's character and reputation as a peaceable and law-abiding citizen, it is proper to inquire as to knowledge of alleged acts of violence committed by the defendant at various times prior to the time of the killing on others than the deceased."

As stated by this court in Henderson v. State, supra, and Kirby v. State, 25 Okla. Cr. 330, 220 P. 74, 33 A.L.R. 1212 and Alexander v. State, 35 Okla. Cr. 89, 248 P. 873, a defendant in a criminal case is entitled to the privilege of putting his character in issue, and his good character or general reputation

8

as to the trait involved in the charge against him is always admissible in his favor to show the improbability of his committing the offense charged, and, where a defendant offers testimony to show his previous good character, the state may in rebuttal offer evidence of his bad character.

See Lowrey v. State, 87 Okla. Cr. 313, 197 P. 2d 637, where various cases from this jurisdiction are reviewed; and see also from other jurisdictions, State v. Holden, 1941, 45 N.M. 147, 113 P. 2d 171, 178; State v. Zakoura 1937, 145 Kan. 804, 68 P. 2d 11, 17; Curtis v. State, 1933, 188 Ark. 36, 64 S. W. 2d 86; Bevis v. State, 1946, 209 Ark. 624, 192 S.W. 2d 113; State v. Gilbert, 1941, 196 S.C. 306, 13 S.E. 2d 451; State v. Sims, 1938, 213 N.C. 590, 197 S.E. 176; State v. Kelly, 1936, 187 Wash. 301, 60 P. 2d 50; and People v. Madison 1935, 3 Cal. 2d 668, 46 P. 2d 159.

The jury apparently gave the defendant the benefit of all doubts, in view of the positive evidence of his calling the deceased to the kitchen of his home and at the entrance door from a bedroom, shooting him down. The trial court was most lenient in assessment of punishment and perhaps considered defendant's age and poor physical condition.

The facts require that the judgment be and the same is hereby affirmed.

BRETT, P. J., and JONES, J., concur.