**J. B. MILLER, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13640.**

Court of Criminal Appeals of Oklahoma.

June 29, 1966.

Rehearing Denied Oct. 5, 1966.

Sullivan & Sullivan, Duncan, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in error, J. B. Miller, hereinafter referred to as the defendant, was charged in the District Court of Stephens County with the crime of Lewd Molestation of a Minor Child. He was tried by a jury, found guilty, and sentenced to Five Years in the Penitentiary. From that judgment and sentence he now appeals to this Court, alleging several assignments of error.

The evidence presented on behalf of the state was that the prosecutrix, a girl 9 years of age, and her brother were selling candy on the 25th of April, 1964; and that she went to the Miller house. Mrs. Miller was away from home, and the defendant answered the door. The prosecutrix stated in her testimony that the defendant opened the door for her, and when she went inside, he asked her if she knew how to play the piano. That the next thing he did was to put his hand under her dress, she described the occurrences as follows:

"A. He asked me if it felt good.

Q. Where did he have his hand?

A. On my kidneys.

Q. Did he have his hand inside your pants?

A. Yes.

Q. Did he pull your panties down?

A. No.

Q. What did he do next?

A. He put his hands on my waist and told me to lay down on the floor.

Q. Did you lay down on the floor?

A. Yes.

Q. Did he pull you down on the floor?

A. He was pushing me down.

Q. Did he get down on the floor with you?

A. He got on his knees.

Q. Were you sitting on the floor?

A. No.

Q. What position were you in?

A. I was laying on my back.

Q. Then what did he do after he pushed you down on the floor and you were laying on your back?

A. He pulled down my pants.

Q. He pulled your panties down then?

A. Yes.

Q. How far down did he pull your panties?

A. Nearly to my knees.

Q. Then what did he do?

A. He asked me if he could kiss it.

Q. And did he?

A. Yes.

Q. He put his mouth against your private parts?

A. Yes.

Q. How long did he keep it there?

A. About a minute.

Q. Did he get up?

A. Yes.

Q. What did you do when you got up?

A. I told him that I had to go then."

She stated that when she left, she ran about a block, and found her brother, and they went on home. She told her brother what had happened, and he told her mother, who in turn told her father. He immediately took the little girl, and found the policeman. The Sheriff was notified, and subsequently they went to the Miller house to talk to the defendant.

All of the police officers and Mr. Miller testified to substantially the same happenings that followed. They said Mr. Miller denied the act for some time, but when they all went into the house, he did admit the act and apologized to the father of the prosecutrix. The Sheriff immediately placed him under arrest. They stated they advised him several times that anything he said could be used against him in court, and that he stated several times that he didn't need an attorney.

The evidence presented on behalf of the defendant was in the form of numerous character witnesses, and the testimony of defendant and his wife. Their testimony was that Mrs. Miller had gone to Duncan for several hours on the day of the incident, and was absent at the time of day that it was to have occurred. They both stated that the officers did not advise defendant of his rights at any time, and that

he did not make the statement admitting the crime.

Defendant's first proposition of error is that the evidence is insufficient to sustain the verdict of the jury and the judgment of the court. He contends that the uncorroborated testimony of the little girl is insufficient to uphold the conviction under Title 21, Okl.St.Ann. § 1123. However, in the two cases he cites as authority to substantiate his allegation (Davis v. State, Okl.Cr., 272 P.2d 478, and White v. State, Okl.Cr., 268 P.2d 310) both were affirmed. In the White case, supra, this rule applying to rape cases was held applicable under § 1123, as follows:

"A conviction for a violation of Title 21, § 1123, O.S.1951, for lewd, indecent acts by an adult person as to a child under 14 years of age may be sustained upon the uncorroborated evidence of the prosecutrix, nevertheless in a case where the evidence may appear inherently improbable and almost incredible, there must be corroboration by other evidence as to the principal facts to sustain conviction."

■ In other words, the testimony of the prosecutrix would have to be *inherently improbable and almost incredible* before further corroboration would be necessary.

Such is not the situation in the case at bar. Herein the testimony of the prosecutrix was neither improbable nor contradictory, but to the contrary.

■■ It was clear and convincing, consistent, and substantially corroborated by the testimony of the police officers as to defendant's confession. Even though defendant denied making the admission at the trial, this was a question of fact for the jury. This Court has held repeatedly, that we will not substitute our opinion for that of the jury. They had the opportunity to see and hear the witnesses and judge their credibility.

"It is not for this Court to substitute its judgment on question of fact, or of the weight of the evidence for that of the jury, where there is competent evidence

from which the jury may reasonably and logically find that guilt of the defendant even though the evidence may be conflicting, or such that different inferences might reasonably be drawn thereupon."

See, Martin v. State, Okl.Cr., 375 P.2d 481.

We have carefully reviewed the evidence in the record, and find it is sufficient to sustain the verdict.

█ Defendant's second proposition of error complains of misconduct of the assistant county attorney in the cross-examination of his character witnesses. He cites no authority for this, and this Court presumes the reason being the great weight of authority in Oklahoma to the contrary, holding that a witness testifying to the good reputation or character of a defendant in a criminal prosecution may be interrogated on cross-examination with respect to rumors or reports of particular acts imputed to the defendant, and as to what the witness has heard of specific charges of misconduct made against the defendant. Teel v. State, 53 Okl.Cr. 200, 11 P.2d 197; Bond v. State, 53 Okl.Cr. 224, 11 P.2d 200; Johnson v. State, 54 Okl.Cr. 143, 16 P.2d 263; Davis v. State, 54 Okl.Cr. 285, 19 P.2d 384; Ellis v. State, 54 Okl.Cr. 295, 19 P.2d 972; Rowe v. State, 56 Okl.Cr. 64, 33 P.2d 233; Steyh v. State, 58 Okl.Cr. 258, 52 P.2d 121; Seabolt v. State, 59 Okl. Cr. 1, 57 P.2d 278; Henderson v. State, 59 Okl.Cr. 86, 56 P.2d 915; Long v. State, 61 Okl.Cr. 274, 67 P.2d 980; Allen v. State, 72 Okl.Cr. 102, 113 P.2d 835; Lyons v. State, 76 Okl.Cr. 41, 133 P.2d 898; Gallagher v. State, 81 Okl.Cr. 15, 159 P.2d 562; Lowrey v. State, 87 Okl.Cr. 313, 197 P.2d 637; Anglin v. State, 92 Okl.Cr. 430, 224 P.2d 272; Whitten v. State, 94 Okl.Cr. 393, 236 P.2d 706; Taylor v. State, 96 Okl.Cr. 1, 247 P.2d 749.

██ The state's brief quotes at length from the Gallagher case, supra, as follows:

"Counsel contend that this examination was improper and base their objection upon the ground that the state did not attempt to offer witnesses in rebuttal to prove the truthfulness of questions which they had asked on cross-examination and which had been denied. That this conclusively showed that such questions were not asked in good faith.

In the cross-examination of a witness called to testify to the defendant's good reputation as a law-abiding citizen, it is permissible to ask the witness on cross-examination if he had heard of various specific acts of the defendant inconsistent with such reputation. Stouse v. State, 6 Okl.Cr. 415, 110 P. 271; Johnson v. State, 54 Okl.Cr. 143, 16 P.2d 263; Bond v. State, 53 Okl.Cr. 224, 11 P.2d 200; Carroll v. State, 24 Okl.Cr. 26, 215 P. 797.

It is improper for the cross-examiner to inquire of a witness concerning alleged acts of the defendant which are creatures of the examiner's imagination and which did not occur, for the purpose of leaving the impression with the jury that his reputation is bad. The examiner should act in the utmost good faith and should be severely reprimanded by the trial court if found guilty of bad faith in his cross-examination of the witness along this line. The extent of such cross-examination is ordinarily a matter in the sound discretion of the trial court. However, it would be improper for the state, over the objection of counsel for the defendant, to offer in evidence proof of specific acts of the defendant about which inquiry is made, where such acts are denied. These alleged acts are collateral to the issue and would come under the general rule of law that upon the trial of one accused of crime, proof of the commission of other crimes are not admissible against the defendant. These are collateral to the main case and, if the witness denies ever having heard of these specific acts about which inquiry is made, then, the State may not prove that such acts were actually committed. We have carefully read all of the examination of the witnesses in connection with this con-

tention of counsel and we find nothing which would indicate that the prosecution was in bad faith in making the inquiries about which the objection is made."

In the instant case, the cross-examination of Frank Powers was regarding a similar incident that had been reported in the papers there in Comanche. The Assistant County Attorney asked:

"Q. That's what I say, you said you didn't know anything about the facts, but you had heard such an incident happened?

A. After they had got this up, there was something in the paper about it, I told him all I knew was what I got out of the paper.

Q. I'm talking about a previous case.

A. Well, I'm talking about previous, too.

Q. You did hear about a previous incident?

A. Something in the paper, come out in the paper about it.

Q. Involving Mr. Miller?

A. No, I wouldn't say it was involving him, I don't remember just how it read.

Q. And so you didn't tell Mr. Berry then that you had heard about a previous incident similar to this one?

A. No.

Q. But you did talk to Mr. Berry, didn't you?

A. Yes."

Therefore, the same rule would apply to this case, as in the Gallagher case, supra:

"Where witness denies having heard of particular facts inquired about on cross-examination, the State may not, over objection of counsel for accused, offer evidence in rebuttal tending to show that the crimes about which inquiry was made on cross-examination were actually committed by defendant."

■ The state could have offered testimony to impeach the truth and veracity of the character witness, however, had the

state introduced proof of previous crimes on rebuttal, as defense counsel contends they should have done, it would have been improper.

The defense did not raise the question of bad faith on the part of the prosecutor, and we feel, after careful examination of the testimony of the witness, that he appeared to be confused regarding the questioning pertaining to the previous instance.

■■ To insure the good faith of the questioning of the state, and to determine whether to allow the cross-examination, it has been set out in the case of State v. Steensen (1955), 35 N.J.Super. 103, 113 A.2d 203, that the trial court should conduct a preliminary inquiry out of the presence of the jury and the trial judge should satisfy himself:

"(1) [T]hat there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction, or other pertinent misconduct of the defendant;

(2) [T]hat a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;

(3) [T]hat neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;

(4) [T]hat the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and

(5) [T]hat the examination will be conducted in the proper form, that is: 'Have you heard,' etc., not 'Do you know,' etc. * * *

And if the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose either at the conclusion thereof or in the charge."

■ This Court would suggest the above guidelines to the trial courts as the better practice to follow, to insure the good faith of the prosecutor, and that prejudicial insinuations do not reach the jury.

■ Defendant's third proposition of error concerns the court allowing the testimony of the law officers and the prosecutrix' father regarding the admission defendant made in their presence. He contends that the trial court refused to pass upon whether any statement the defendant made was voluntary or involuntary, as a matter of law, and said that he would submit the issues to the jury.

However, the record reveals that the trial judge heard considerable testimony out of the hearing of the jury, and ruled it was admissible. Counsel made a lengthy objection, the jury was recalled, and the circumstances of the admission were again testified to by the witness. When the other two witnesses testified as to the admission, no objections were made by counsel.

Further, there was a question of fact to be decided by the jury, as the defendant and his wife testified that he did not make the statement of admission, and that he was not advised of his rights.

This Court is of the opinion that the trial court did not err, but correctly ruled the testimony regarding the admission of defendant admissible.

There was no proof introduced that the admission was procured by such means or under such circumstances as to render it inadmissible.

This Court has reviewed this casemade several times, because of the nature of the crime, and the seriousness of the issues involved. We have found no error of law sufficient to cause reversal.

It is therefore, the order of this Court, that the judgment and sentence of the District Court of Stephens County be, and the same is, affirmed.

BUSSEY, P. J., and BRETT, J., concur.