Herman Eugene WING, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16013.

Court of Criminal Appeals of Oklahoma.

Nov. 17, 1971.

Rehearing Denied Dec. 10, 1971.

An appeal from the District Court of Tulsa County; R. F. Martin, Judge.

Plaintiff in Error, Herman Eugene Wing, was convicted for the crime of Robbery with Firearms, After Former Conviction of a Felony. His punishment was fixed at a term of one hundred and five (105) years in the state penitentiary. Modified to a term of forty-five (45) years imprisonment. Judgment and sentence modified and affirmed.

Thomas G. Hanlon, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in Error, Herman Eugene Wing, hereinafter referred to as defendant, was convicted and sentenced to one hundred and five (105) years imprisonment for the crime of robbery with firearms,

After Former Conviction of a Felony, in the District Court of Tulsa County, Case No. CRF–69–1867. Judgment and Sentence was imposed on March 13, 1970, and this appeal perfected therefrom.

Defendant was charged with having robbed William Fred Oakley by threat of firearm on November 5, 1969. The evidence establishes that on November 5, 1969, shortly before midnight, two masked and armed men broke into the glass front door of the Harvard Bridge Club in Tulsa, Oklahoma. Several witnesses present in the Club at the time testified as to the men breaking in, but none saw the faces of the robbers and were not able to identify defendant as one of them.

William Fred Oakley testified he was the manager of the Club and that the robber with a .45 automatic pistol told Oakley to put his hands on a table and surrender his money. Oakley was then told to lie on the floor where he was unable to see anyone else. Oakley testified approximately $455.00 was taken from him. Oakley further testified he had known defendant for ten (10) to twelve (12) years and did not think either of the robbers was defendant.

Paul Joe Compton testified as to being present at the time of the robbery during which he was hit on the head and lost a lot of blood. Compton did not see the robbers' faces and could not identify defendant. Compton's blood type was the same as blood stains found on defendant's clothing.

Bobby Baldwin testified that as the robbers broke in the front he ran out the back door into the alley. Baldwin remained in the area and saw two men come out the back door who were ordered to stop by a policeman. One man dropped his gun and went back into the club while the other man ran away exchanging gun fire with the policeman.

Police officer Leamon testified that pursuant to a police broadcast he went to the rear of the Club where he ordered two men to stop. One man ran back inside

the Club and the other man ran down the alleyway. Officer Leamon fired at the running man whose mask slipped enabling Leamon to see his face. Leamon identified him as defendant.

Police officer Cobb testified he was also at the rear of the Club and identified defendant as the person who ran from the rear of the Club.

Police officer Cartner testified he arrived at the front of the Club during the robbery and saw the two masked robbers, one carrying a .45 automatic pistol and the other with a P38 German Lugar weapon. After hearing some shots from the rear, one of the men ran through the front door. Officer Cartner fired two shots at the fleeing man, the second of which struck the man who died as a result thereof. This man was identified as S. E. Powell. Officer Cartner said that upon seeing defendant after his arrest at the police station he was wearing clothing similar to that of the other robber who escaped.

Officers Wolf and Holt testified they were patroling the area for the man who had been seen running away from the back of the Club shortly after the robbery. They found defendant lying in some tall grass on his stomach in an alley behind a building at 12th and Harvard Streets.

Officer Goodenough testified that in searching the scene he recovered a German Lugar pistol, an axe, a spent nine millimeter slug, and one .45 automatic pistol from the rear of the Club. He also searched an empty 1969 Pontiac parked just west of the Club from which he recovered a traffic citation issued to Herman Wing. A ballistics expert identified the spent shell as coming from the Lugar. Another expert identified finger prints on the Lugar as those of the defendant.

For the defense Barbara Jean Chipman testified defendant had borrowed her car, the 1969 Pontiac found next to the Club, which he was going to loan to S. E. Powell. She further testified defendant was in her lounge in Bartlesville on the night in question until after midnight when they went to her apartment. Once there defendant received a phone call. She and defendant then came to Tulsa. Four other witnesses corroborated that defendant was in the Bartlesville lounge on the night in question.

Defendant testified he borrowed Miss Chipman's car for the use of Powell and that defendant remained at the Club until after midnight. After receiving a phone call at Miss Chipman's apartment saying Powell was in trouble, he drove to Tulsa. Defendant testified he got out of the car about 12th and Harvard streets to look for the car left by Powell. While walking down the alley, defendant states he was arrested and struck by police officers. Defendant further testified he had handled the Lugar previously when Powell had offered to sell it to defendant.

■ It is defendant's first assignment of error that there was insufficient evidence presented at the preliminary examination to hold defendant for trial. Defendant does not argue this point in any detail and cites no authorities. After reviewing the record we find this contention to be without merit as there was sufficient evidence for the examining magistrate to conclude that a public offense had been committed and that there was reasonable cause to believe defendant guilty thereof. 22 O.S.1961, § 264. Evidence at the preliminary need not be sufficient to support conviction. Taylor v. State, 96 Okl. Cr. 1, 247 P.2d 749 (1952).

■ It is defendant's second assignment that it was error for the trial court not to grant a change of venue. Defendant does not urge this point with much conviction and does not cite any authorities in support. We find defendant has not sustained his burden to show that there was sufficient pre-trial publicity to prevent defendant from receiving a fair trial by impartial jury in Tulsa County, and

that the voir dire of the jury did not adequately screen out jurors with fixed opinions. See Shapard v. State, Okl.Cr., 437 P.2d 565 (1967).

Next defendant contends the trial court erred in failing to suppress several items of evidence. First, defendant contends it was error to admit in evidence articles of clothing worn by defendant at the time of his arrest. Defendant argues his arrest was illegal and thus the clothes were the fruit of an illegal arrest and thus inadmissible. We cannot agree that the arrest was illegal. Although a warrant had not been issued, the officers arresting defendant a short distance from the scene of the crime only minutes after its occurrence had been given a general description of the suspect who ran down the alley from the Club. The defendant's clothing generally fit the description. Accordingly, the arresting officers had reasonable cause to believe defendant had committed a felony not only because of his appearance, but due to his location and the time he was found. An officer may arrest without a warrant for a felony, not committed in his presence, when the officer has reasonable cause for believing the person arrested committed the felony. 22 O.S.1961, § 196. We find the officers had reasonable cause to arrest defendant and conclude the arrest was lawful.

Secondly, defendant complains it was error not to suppress the results of the search without a warrant of the 1969 Pontiac parked near the Club. The State contends defendant had no standing to attack the legality of the search.

Officer Goodenough testified that he found and searched an empty 1969 Pontiac parked on Harvard street near the Club. The officer examined the car and found finger prints, sunglasses and a traffic citation issued to Herman Wing along with the prints of S. E. Powell. Legal title to the automobile belonged to Miss Chipman. Defendant testified he had used the car on numerous occasions with the consent of

the owner. Further, defendant testified he had secured the car with the owner's consent for the use of Powell on the night of the robbery. The implication from the State's evidence is that both defendant and Powell had used the car in arriving together at the robbery scene.

It is not necessary to have legal title to the premises searched or property seized to attack the legality of a search and seizure as a person has standing to challenge a search if he is a person aggrieved by an unlawful search. As stated in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960):

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." 362 U.S. at 261, 80 S.Ct. at 731.

This Court has previously held that a mere passenger in an automobile belonging to another has standing to attack the legality of a search. Watt v. State, Okl. Cr., 487 P.2d 961 (1971). Lawson v. State, Okl.Cr., 484 P.2d 1337 (1971). Thompson v. State, Okl.Cr., 487 P.2d 737 (1971). As we stated in Lindsey v. State, Okl.Cr., 488 P.2d 935 (1971):

"A person who is the victim of a search and seizure directed against him has standing to assert his rights protecting him against an unreasonable search and seizure, as it is not necessary to have legal title in the premises searched or property seized."

As explained in Jones v. United States, supra, and Lindsey v. State, supra, the State cannot seek to prove possession by defendant of items discovered in a search and then claim he has no standing to object to the search. In Wattenburg v.

United States, 388 F.2d 853 (9th Cir. 1968), the defendants Wattenburg and Owens were charged with illegally cutting and stealing Christmas trees from the United States. Introduced into evidence were Christmas trees found in a search behind a lodge where Owens was a roomer. In ruling the trees inadmissible the court stated:

"But, in any event, Owens did have standing to object to that search and seizure, not necessarily because of his status as a roomer at Hideaway Lodge, but because one of the essential facts the Government sought to prove against Owens was that he was a joint possessor of the Christmas trees. See Jones v. United States, 362 U.S. 257, 263–264, 80 S.Ct. 725, 4 L.Ed.2d 697; United States v. Jeffers, 342 U.S. 48, 52, 72 S. Ct. 93, 96 L.Ed. 59."

■ In the instant case the State sought to prove the finger prints, sunglasses and traffic ticket in the car belonged to defendant. The implication to the jury was that defendant and Powell had both been in possession of the car and used it in arriving at the scene of the robbery. Accordingly, since the State sought to prove defendant's possession of the items taken from the search, he was a person aggrieved by the search directed against him and he had standing to attack the legality of the search.

■ As to the legality of the search, we find no theory to support it as lawful. There was no warrant and no compelling reasons for non-procurement. The items were not in clear view. Since the arrest and search were not contemporaneous, the search was not incident to the arrest. The search was not lawful as a proper inventory of property legally taken into custody. Nor was the car evidence abandoned at the scene of the crime. The officers had ample opportunity to secure a warrant as required by law and failed to do so. Accordingly, the search was unlawful and its fruits inadmissible.

■ However, the fruits of the search challenged by defendant did not constitute a material, vital, or essential part of the evidence incriminating the defendant. They were matters of a collateral nature. This evidence was not so prejudicial that it "fatally infected" the conviction and its exclusion from consideration would not have affected the verdict. Therefore, although admission of the fruits of the search was error it did not fatally infect the conviction and is thus harmless error which does not require reversal of the conviction.

■ Defendant further cites as error the trial court's failure to suppress the prison hospital record showing defendant's blood type claiming a violation of the hearsay prohibition. Evidence is hearsay when its force depends on the competency and credibility of some person other than the witness; and statements otherwise objectionable as hearsay are not admissible because they have been reduced to writing. In re Porters' Estate, 208 Okl. Cr. 475, 257 P.2d 517. Shaw v. State, 76 Okl.Cr. 271, 301, 134 P.2d 999, 138 P.2d 136 (1943). By statute the books and records required by law to be kept by public officers may be received in evidence. 12 O.S.1961, § 502. However, writings of public officials are admissible in evidence only where statutes expressly require that such writings be made. Weeks v. State, 88 Okl.Cr. 291, 202 P.2d 1005 (1949). There must be express statutory authority to compile the report or writing. Steel v. Johnson, 9 Wash.2d 347, 115 P.2d 145. Further as we stated in Lawson v. State, Okl.Cr., 486 P.2d 759, 762 (1971): "It is the rule in this jurisdiction that records made by public officials pursuant to their duties, based entirely on hearsay, are not admissible in evidence to prove any fact disclosed therein."

■ The State called as a rebuttal witness Mr. William Arnold, administrator of the Oklahoma State Penitentiary Hos-

pital, to identify a hospital kept record for H. E. Wing showing his blood type. Mr. Arnold testified he did not know who made the actual blood type test or recorded it on the hospital record. We are of the opinion that this was hearsay evidence. We have not been advised, nor are we aware, of any statute requiring the keeping of a record at the Oklahoma State Penitentiary Hospital of an inmate's blood type. Thus it is not admissible as a writing required by statute to be kept by a public official. It is readily apparent the information contained in the hospital record was not first hand knowledge of the witness. Accordingly, the penitentiary hospital record was inadmissible as hearsay and the trial court's admitting same over objection was error.

Errors must never be disregarded lightly even though not substantial in nature. However, in view of the total evidence we do not think that this was a close case where this bit of evidence would have turned the tide and caused the jury to return a verdict of guilty. The reasonable effect of the hospital report was to refute defendant's theory that the blood on his clothing at the time of his arrest resulted from injuries to him by the police during the arrest. This was not a substantial part of the evidence establishing the crime, defendant's identity, or placing him at the scene of the crime. It is to be remembered that two witnesses identified defendant as one of the robbers. Therefore, excluding the hospital report from evidence would not, in our opinion, have changed or influenced the jury's finding of guilt.

It is defendant's further assignment that the trial court erred in denying his pre-trial motion for inspection and production of evidence in the State's possession. Defendant's motion requested that State furnish defendant with any scientific tests and results made in connection with this particular case, specifically of items taken from defendant's person or his car. The motion was filed on January 30 and denied on February 23 as the trial began.

Defendant argues that pre-trial discovery is desirable and criticizes the so-called "sporting theory" in a trial. We share the view expressed in the American Bar Association's Standards Relating To Discovery and Procedure Before Trial, Section 1.2:

"In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, the adversary system, and national security."

As to pre-trial discovery and inspection of articles in the possession of prosecuting authorities, this Court has held there should be disclosure of technical reports,[1] an alleged death weapon with reports concerning same,[2] defendant's statement to police,[3] a record of prior criminal convictions of intended witnesses,[4] and material which tends to negate the defendant's guilt or that would tend to reduce his punishment.[5] This is not to say the defense is entitled to an aimless "fishing expedition," and we have denied inspection of a prosecutor's work product[6] or a detective's personal notes not subject to introduction into evidence.[7]

1. Sadler v. Lackey, Okl.Cr., 319 P.2d 610.

2. Doakes v. District Court, Okl.Cr., 447 P.2d 461 (1968).

3. Id.

4. Stevenson v. State, Okl.Cr., 486 P.2d 646 (1971).

5. Id.

6. Shapard v. State, Okl.Cr., 437 P.2d 565 (1967).

7. Smith v. State, Okl.Cr., 462 P.2d 328 (1969).

A criminal trial is not a game of hide and seek, and we are committed to the concept of full pre-trial discovery where reasonable and practical. However, in the case at bar defendant has not sustained his burden of proof showing a prejudicial denial of pre-trial inspection of items in the possession of the State. Defendant's motion was general in terms, and he has not shown any material prejudice or injury resulting from the denial. Defendant did not ask for a continuance on the basis of the denial of inspection, nor did he seek an extraordinary writ before trial. See Doakes v. District Court, supra. We will not reverse a conviction on the mere speculation that a denied pre-trial inspection and disclosure might have been helpful to the defendant. See Stevenson v. State, supra.

Finally, defendant argues the evidence does not prove he personally robbed Oakley as charged, but rather that S. E. Powell robbed Oakley. We find no merit to this contention since the evidence indicates that defendant and Powell jointly committed the armed robbery at the Harvard Bridge Club during which Oakley was robbed. All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, are punishable as principals. 21 O.S.1961, § 172.

We therefore conclude there are no errors requiring reversal of the conviction. There are, however, errors set out above as well as inflammatory remarks of the prosecutor during argument which, in the interest of justice, require modification of the sentence imposed. Accordingly, the sentence of one hundred and five (105) years imprisonment is modified to a term of forty-five (45) years, and as so modified the judgment and sentence is hereby affirmed.

BUSSEY, P. J., concurs in results.