Jesse Elmer CUSTER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-76-522.

Court of Criminal Appeals of Oklahoma.

Feb. 22, 1977.

10. supra Note 8.

John K. Harlin, Jr., Jo Stanley Glenn, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

The Appellant, Jesse Elmer Custer, hereinafter referred to as defendant, was charged, tried and convicted of the offense of Knowingly Concealing Stolen Property in violation of 21 O.S.1971, § 1713, in the District Court, Tulsa County, Case No. CRF–76–1554. After trial by jury, sentence was fixed at one (1) year imprisonment in the County Jail and a fine of Five Hundred Dollars ($500.00). From said judgment and sentence the defendant has filed this timely appeal.

The State's first witness, Orville Munson, testified he owned a shop in Tahlequah, which, on July, 8, 1975, was broken into and certain items of Indian jewelry were missing. He testified he next saw the missing jewelry at the Tulsa Police Station and identified some thirty three pieces of Indian jewelry which belonged to him and were taken at that break-in.

The next witness for the State was Hal Painter, who testified that during the month of June, 1975, his grandmother, who owned a jewelry store, was robbed of a considerable amount of Indian jewelry. He said he began visiting certain pool halls and foosball establishments after hearing that some of these places sold Indian jewelry. Specifically, he went to The Mine Shaft in Tulsa on July 8, 1975. At that time he said he met the defendant. A conversation was had between the witness and Custer concerning the purchase of Indian jewelry at which time Painter said the defendant told him that no Indian jewelry was available at that time but to keep coming back and he would obtain some for him. The next day, Painter talked with two Tulsa police officers regarding the robbery of his grandmother's jewelry, and they solicited his assistance in locating the missing jewelry.

Painter was later contacted by two other Tulsa police officers—Criner and Diamond. Painter was outfitted with a "beeper" on his right leg, and instructed to go into The Mine Shaft and activate the beeper if he saw his grandmother's jewelry.

The witness testified that he contacted the defendant in The Mine Shaft, viewed Indian jewelry contained in two wet towels in the back of the building, and purchased two rings for $50.00. The beeper failed to work properly, and he had to leave the building to summon Criner and Diamond who were waiting outside. The witness identified in court the two rings he had purchased from the defendant and stated he thought they had belonged to his grandmother.

Officer Drew Diamond testified he observed Officer Criner reach under the counter in The Mine Shaft and remove a couple of white towels in which jewelry items were found. He testified he and Criner then found four pieces of jewelry on the defendant's person.

Officer Alan Criner testified that upon entering the front door of The Mine Shaft he observed the defendant standing behind the counter and saw him stick two white towels beneath the counter. (Tr. 232). He testified he then arrested the defendant and after Painter informed him the jewelry was in a white towel, he removed the towels from under the counter and opened them. He testified the towels were wet, cold, and contained ice particles. He asked the defendant if he had any more jewelry and the defendant responded by removing a ring from his finger and other jewelry from his pocket and handing it to him. After advising the defendant of his Miranda rights, the officer then asked the defendant if he knew where the jewelry came from. The defendant divulged the names of two people who had sold him the jewelry and the price he had paid. Criner testified the defendant told him the jewelry came from the Tahlequah area.

The first witness for the defendant was Don Manes, a private investigator. Manes said he went to The Mine Shaft and took pictures of its interior. He offered his opinion that it was impossible for Officer Criner to have seen the two white towels at the end of the counter because the cash register and soda pop machine would have obstructed his view. The witness told of conducting an experiment when he placed an individual at the end of the counter where the defendant was said to have stood and, standing at the front door, he testified it was impossible for anyone to see any object held by that individual from the shoulder down while he stood at the end of the counter because of the obstructions mentioned above.

The defendant testified that he was the owner and lessee of The Mine Shaft. He said he had been convicted of Burglary and Transporting Loaded Firearms, and was discharged from the Military after only five months service.

The defendant testified that on July 9, 1975, he purchased from two individuals known as Bob Brown and Rick Crauser some turquoise Indian jewelry for the price of $650.00. The defendant said he had been engaged, off and on, in the buying and selling of Indian jewelry. He denied he ever told Officer Criner that he had paid $150.00 for the jewelry and he further denied that he had ever told Criner that he knew the jewelry came from the Tahlequah area. Finally, the defendant denied that he knew the jewelry was stolen.

■ For his first assignment of error, the defendant contends the trial court committed reversible error in refusing to sustain his motion to suppress. The main thrust of defendant's argument is that the court erred in not sustaining his objection to the introduction into evidence of the jewelry, which the defendant contends was taken in an illegal search and seizure of both the property and person of the defendant. Defendant's attack is two pronged: First, that the search was made without benefit of a warrant and predicated on suspicion alone; Second, that the evidence obtained by the witness Painter was obtained while said witness was acting as an agent of the police

and therefore falls under the rules of evidence as they apply to police.

In support of these contentions the defendant cites a multitude of cases, too numerous to mention here, in which this Court has held that searches made without benefit of a warrant and predicated on mere suspicion are invalid and therefore any evidence so obtained is inadmissible.

However, throughout his argument defendant overlooked 22 O.S.1971, § 196, which authorizes police to make a valid arrest when a felony has been committed and they have reasonable cause to believe the person arrested committed it. In addition, this Court has ruled on many occasions that a limited search incidental to a lawful arrest is not in violation of the constitution of the United States or this State and that the evidence seized thereby is admissible. See *Duke v. State*, Okl.Cr., 548 P.2d 230 (1976); and *Greene v. State*, Okl.Cr., 508 P.2d 1095 (1973). And finally in *Rogers v. State*, Okl.Cr., 488 P.2d 366 (1971), which also involves surveillance by police officers and the sending of an informant into a building to conduct business with the defendants, this Court held:

"We find that the officers did have sufficient probable cause to make the arrest for a felony, and therefore had authority to break open the door and enter. Consequently, the arrest being legal, the search and seizure was likewise legal." [22 O.S. 1971, §§ 196 and 197; *Shepherd v. United States*, 100 U.S.App.D.C. 302, 244 F.2d 750 (1956); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)]

■ A careful examination of the record in this case reveals that the officers had probable cause to arrest for a felony without a warrant and that the search was incidental to that lawful arrest, and therefore that which was seized was admissible into evidence. Furthermore, in order to search without a warrant, the search must be contemporaneous, both in time and place, with the arrest. The record in the instant case reveals that the search took place simultaneous with the arrest. See, *Faubion v. United States*, 424 F.2d 437

(10th Circuit 1970). We therefore dismiss this assignment of error.

■ For his second assignment of error, the defendant asserts that the trial court erred in allowing the State to amend its Information after the jury was impaneled and sworn. More specifically, the defendant objects to the fact that the initial information (dated July 14, 1975) and the bindover order concerning this defendant listed six different pieces of jewelry while the amended information permitted at trial listed thirty-two pieces of jewelry. The sequence of events follows: Preliminary Information, filed July 14, 1975; Preliminary Hearing, August 12–13, during which thirty-two items of jewelry were introduced into evidence; August 14, District Court Information, listing thirty-two jewelry items, was filed, but apparently not sent to defendant; Arraignment, October 2, during which the word "preliminary" was dropped from the July 14th information and during which defendant acknowledged receipt and waived reading of the information; November 14, first day of trial, during which the August 14th information was read to the jury and court sustained defendant's motion to quash that information but allowed State to amend the July 14th information to add the other pieces of jewelry which were introduced at the Preliminary Hearing. The defendant urges that this amendment was prejudicial to the defendant and that it came as a surprise to the defendant and did not allow him to properly prepare his defense.

In support of his argument the defendant cites several cases of this Court in which we stated that an information may be amended in matters of either form or substance when it can be done without prejudice to the substantial rights of the accused.

We do not find that the amendment affected the substantial rights of the accused. It is obvious that the amendment only concerned the quantity of the jewelry in question. None of the essential elements was changed by the amendment. The dates, times, places and parties remain the same.

The essential elements of the offense remain the same.

As this Court stated in *Ethridge v. State*, Okl.Cr., 418 P.2d 95 (1966) in paragraph four and five of the Syllabus:

"4. An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea or on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit. 22 O.S. § 304."

"5. Where an information charges the offense of Petit Larceny After Former Conviction of Petit Larceny of three cartons of cigarettes and the evidence introduced on behalf of the State discloses the larceny of five cartons, it is not error for the trial court to allow the State to amend the information to conform to the truth. Since said amendment charges the identical offense and does not enhance the punishment, such an amendment is an amendment as to form and may be made with proper safeguards after the trial has begun."

We note the defense counsel did not ask for a continuance but only that the amended information be quashed. Finally, the defendant failed to show how this amendment could have prejudiced his rights. In light of the nature of the amendment and the mere assertion that the defendant was prejudiced thereby, the record fails to show grounds upon which this Court could find reversible error.

■ In his third assignment of error, the defendant alleges that the trial court erred in allowing cross-examination of character witnesses absent a hearing out of presence of the jury to test the good faith of the prosecutor's questions. More specifically, the defendant complains that the District Attorney was allowed to go beyond proper cross-examination of a character witness, in that he was allowed to impeach the credibility of the character witnesses themselves as opposed to testing their knowledge of the reputation of the defendant in the community. We find defendant's argument is not supported by the record.

In his brief, the defendant cites *Miller v. State*, Okl.Cr., 418 P.2d 220 (1966). In that case this Court held that it was proper on cross-examination of character witnesses to ask them questions concerning rumors, arrests or misconduct of the defendant, but if the witness denies having heard such rumors it would be improper for the State to put on evidence in rebuttal, tending to show that the rumors, arrests or misconducts actually occurred. This Court laid down five guidelines in *Miller* for trial courts to follow when the problems of rumor and innuendo arose. The purpose of these guidelines is to determine if the questions asked by the District Attorney on cross-examination were in good faith and had some basis of truth. But the prosecutor's good faith was never challenged and the defendant never requested the *Miller* hearing.

A careful examination of the record in this case indicates to this Court that the *Miller* case does not apply. The questions and answers alluded to by the defendant appear at pages 404–406 of the Transcript:

"Q. Would you say, Mr. Collins, that you have given us your opinion of Mr. Custer, let's say, what you think about his reputation—what you think about his general reputation, and reputation for truthfulness and veracity, would that be a fair statement?

"A. No, it wouldn't. I would say that I have said what has been proven through the years of my affiliations and associates in the barber business.

"Q. And you say that they were not affected by the fact that he had been convicted of burglary, and they were not affected by the fact that he had been convicted of transporting a loaded firearm in a vehicle. Have you heard, sir, that he was arrested for—in 1971 for intimindating an employee?

"MR. HARLIN: Your Honor, I'm going to object to this, again, for the same reason heretofore given.

"THE COURT: I let the other one answer. I'm not sure that that is not a good objection.

"MR. GILLERT: Your Honor, if I may, just for a moment.

"Q. You said that these things would not affect the opinion of the people that you knew that know Jerry Custer; is that right? I mean, these things had no affect on them; is that right?

"A. All of the dealings that I could speak of of business dealings where money was involved have been since '72. In other words, before '71 Jerry was in the capacity as a helper, or a licensed plumber. Since then he has become a contractor, and so forth in the business that he has carried on, and so forth with associates such as myself and Melvin Biggs.

"Q. But you have known—if I can stop you for a moment—you have known him now for a long time; have you not?

"A. Yes, Sir.

"Q. Now, you told us that this is not only your opinion, but the opinion of the others that know him; in other words, you're telling us what his reputation is in the community—in that community over there; is that not right?

"A. I'm telling you he's—I'm in the barber business in the community, and the people that associate in my barber shop say that Jerry is an upstanding citizen.

"Q. Those people that you know and are around, that they say he is a fine, upstanding citizen; is that right? Again, I'm not sure I understand.

"A. Well, sir, he has been allowed into all of their homes from time to time to do plumbing work, and I think that they would accept him as being an upstanding person that they could trust, whether they would be at home or not be at home.

"Q. Now, you said, in response, I believe, to Mr. Harlin's question that these things—the things we have mentioned before don't affect or wouldn't affect either your opinion or their opinion,; is that right, of his general character?

"A. I said that."

We find nothing in the above contrary to the *Miller* case or which would require the trial court to hold a preliminary inquiry to test the good faith of the questions asked by the District Attorney on cross-examination. In the instant case the defendant chose to take the stand himself. The defendant admitted under direct examination that he had been convicted of burglary and transporting loaded firearms and that he had gone AWOL from the U. S. Air Force. (Tr. 334). See, *Moore v. State*, Okl. Cr., 374 P.2d 630 (1962); *Taylor v. State*, 96 Okl.Cr. 1, 247 P.2d 749 (1952); and *Rhyne v. State*, Okl.Cr., 514 P.2d 407 (1973). Therefore, we hold that once the defendant himself admits to prior felony convictions and then calls character witnesses on his behalf, the prosecution has every right to cross-examine the character witnesses to ascertain if they are aware of these convictions and, if so, in what way it affects their opinion of the defendant's reputation. Furthermore, we find no indication in the record to show subsequent questions were in bad faith or worked to prejudice the defendant. We are of the opinion the prosecutor was merely attempting to ascertain the basis of the witness' character opinion.

For his final assignment of error, the defendant asserts that the trial court committed error by inferring guilt in its Instruction No. 5.

In support of his argument, defendant cites an instruction which was condemned by this Court in *Payne v. State*, Okl.Cr., 435 P.2d 424 (1967). In *Payne*, supra, this Court held that the presumption of guilt which accompanied the possession of stolen property under certain circumstances was unconstitutional as a violation of due process because it shifted the burden of proof to defendant. However, in the case of *Webb v. State*, Okl.Cr., 520 P.2d 825 (1974), this Court unanimously approved the following instruction:

" 'The possession of recently stolen property found in the possession of one alleged to have received it, knowing at that time or having reasonable cause to believe that it was stolen property, *may be*

*explained*, but such possession is a circumstance which, *if unsatisfactorily explained to the jury*, may be considered in determining the guilt or innocence of the person charged with receiving stolen property.

" 'The mere possession of property recently stolen is not alone sufficient to convict the possessor of knowingly concealing stolen property, or of having reasonable cause to believe that it was stolen property, but when such fact is supplemented with other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to pass upon as to the guilt or innocence of the defendant of knowingly concealing stolen property.' " (Emphasis Orig.)

On examining the record as a whole, it is apparent to this Court that the defendant received a fair and impartial trial before a jury. We find no reason for a modification or a reversal of the judgment and sentence rendered by the trial court. Accordingly, the judgment and sentence appealed from is AFFIRMED.

BLISS and BRETT, JJ., concur.