James Dwain HAMPTON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-13638.

Court of Criminal Appeals of Oklahoma.

Oct. 6, 1965.

Rehearing Denied Nov. 10, 1965.

Pat Sullivan and Lewis F. Oerke, Lawton, for plaintiff in error.

Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in Error, James Dwain Hampton, hereinafter referred to as defendant, was found guilty of the charge of Murder in the District Court of Kiowa County, Oklahoma, and sentenced to Life Imprisonment. From that judgment and sentence he has perfected his appeal to this Court alleging two contentions of error.

This charge of murder arose from the shooting of a tavern owner during an armed robbery. The evidence presented by the State establishes that the defendant and another man, Clarence Taylor, entered Kay's Tavern at Snyder, Oklahoma, on the night of February 25, 1964. They were described by all the occupants as one being tall and dark-headed; and the other, shorter and sandy-haired. The defendant was positively identified by two boys who were in the tavern but left shortly before the trouble occurred. The one eye-witness to the robbery, J. E. Riley, was unable to positively identify the defendant, but stated he looked like the man he saw. He explained his attention was centered on the tall, dark-headed man, as he was holding the gun. Mr. Riley said Taylor ordered everyone to get down on the floor, which he did. He heard Taylor order Kay Swyden (the deceased) to lock the door. There was a scuffle of feet, apparently a struggle, and then the gun went off three or four times. Mr. Riley testified that when he heard the shots, he jumped up and tried to get out the door, but something hit him over the head and knocked him out. (Later discovered to be a coke bottle) When he opened his eyes a few minutes later; he saw the shorter man run toward Taylor and Swyden, and he was able to get up and get out the door. He ran all the way to the City Marshal's Office for help, but before they could return, Mr. Swyden came up in his car, honking the horn; told the Marshal that "they" had robbed him and shot him; that he thought he was dying. They took him to the Dr.'s office and later to the hospital, where he died about 2:30 A.M. He stated several times, "They have killed me". He gave the Deputy Sheriff a description of the men and the car they were driving, which was also described by another witness at the tavern.

The defendant and Taylor were arrested about 12:45 A.M. between Ft. Cobb and Anadarko, driving the described Oldsmobile. Forrest Hall, City Marshall at Ft. Cobb, testified that Taylor was wearing a plaid sports coat with leather patches on the sleeve, and Hampton was wearing a red knit shirt and blue suit coat. When Mr. Riley was brought in to identify them, Hall noticed Hampton had removed his red shirt, buttoned up his suit coat and tucked it in his trousers. When asked what he had done with his shirt, he told Hall he had torn it up and flushed it down the stool.

A gas loaded pellet gun was found concealed in the wall of defendant's car, but was not identified as the murder gun.

Defendant testified in his own behalf, and attempted to establish an alibi. He stated that on February 25 he was at the Hillcrest Steak House in Oklahoma City where he saw Taylor (who he had met several times) and a girl called "Blackie". He agreed to drive them to Altus; they arrived there at approximately 9:00 P.M., drove thru town, then went to a Drive-In Restaurant. Taylor asked to borrow the car, left, and Hampton and the girl remained at the restaurant for awhile. She later checked into a motel down the street, where she was to meet some man. Defendant walked back to the restaurant where he allegedly stayed for 2 hours waiting for Taylor to come back. When he returned, they started back to Oklahoma City, and were arrested between Ft. Cobb and Ana-

darko. He stated he was not in Kay's Tavern, or in Snyder. Stated he had never been convicted of a felony, but has paid fines for drunk, fighting, and traffic in Oklahoma City and Lawton. On cross-examination, he could not identify the Drive-In Restaurant, had made no effort to find the girl, nor did the defense call Taylor to substantiate any part of his story.

Defendant's first contention of error is that the trial court erred in overruling his objections to statements purportedly made by deceased. The statement made by Kay Swyden before his death, and testified to by Earl Shaw, Deputy Sheriff of Kiowa County; and Doodle Hargrove, City Marshal of Snyder; described his assailants as:

"One of them was 6'2" or 3", dark-headed, weighed about 180 lbs., between 25 and 30; and a smaller boy between 5'5" and 5'6", 140 lbs., sandy-haired and between 25 and 30."

He further described their car as white and blue '55 or '56 Oldsmobile.

The deputy's testimony begins at pg. 91 of the casemade, and there was *no objection* by defense counsel to the testimony regarding Mr. Swyden's statement, *no objection* to *any* of his testimony, nor was he cross-examined.

■ This Court has consistently held, as in the case of Music v. State, Okl.Cr., 396 P.2d 894:

"It is the duty of counsel to raise, at the proper time, and in the proper manner, all objections to the proceedings and save proper exceptions. When this is not done, they are treated as waived, and there are few exceptions to this rule."

It was further held in the case of Bearshield v. State, Okl.Cr., 318 P.2d 462, that when evidence is admitted without objection, it is too late to complain about it upon appeal.

■ However, in the instant cause, the testimony regarding the "dying declaration" was properly admitted. This Court stated in the case of Graham v. State, 80 Okl.Cr. 159, 157 P.2d 758:

"Dying declarations are statements of material facts concerning the cause and circumstances of the homicide, made by the victim under the solemn conviction of impending death."

■ The preliminary proof laying grounds for the admission of the "dying declaration" examined, and found sufficient.

■■ Defendant states in his brief that this statement by Swyden before his death would fit anyone of that description, and that this description was the only real identification of defendant. Defense counsel seems to forget the testimony of J. E. Riley, who although not able to positively identify Hampton, gave the same general description, and positively identified Taylor. And, the testimony of Daniel Kroeckel, pg. 52, and Gerald Hilliard, pg. 67, wherein they both positively identify Hampton as the man who entered the Tavern with Taylor. Even though it is apparent that Hampton did not actually fire the gun that took Swyden's life, our law is equally clear on this point:

"Homicide committed in the perpetration of robbery is "murder," and in such a case deliberation and premeditated design to effect death are presumed."

Howington v. State, 35 Okl.Cr. 352, 250 P. 941; Morris v. State, 68 Okl.Cr. 147, 96 P.2d 88; Fritz v. State, 8 Okl.Cr. 342, 128 P. 170.

Title 21 O.S.A. § 172, provides:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

And, further, in the case of Valdez v. State, 18 Okl.Cr. 204, 194 P. 451:

"Where two or more persons combine together for the purpose of accomplishing some unlawful act, and in the

commission of such act murder is perpetrated, each of the parties to such conspiracy [is] guilty, regardless of whether he participated in the actual killing or not."

Where parties voluntarily act together in the commission of any act which may result in death to another and such death ensues therefrom, all such parties are as guilty of murder as if they had intended the death of such party.

■ Defendant's second contention of error that the verdict was the result of passion and prejudice created by certain conduct of the county attorney, will not be discussed at length, as the record in this case does not reflect any mis-conduct or statement by the county attorney which would be so prejudicial as to inflame the jury in their verdict. Most of the statements complained of were for the purpose of cross-examination of the defendant on subjects that were opened by the defense, or to establish defendant's veracity.

This Court has carefully reviewed the record in this case, and find no error of law sufficient to cause reversal. Therefore, the judgment and sentence of the trial court is hereby affirmed.

BUSSEY, P. J., and BRETT, J., concurs.