**Roderick Lee KITE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16086.**

Court of Criminal Appeals of Oklahoma.

Feb. 14, 1973.

Rehearing Denied March 5, 1973.

Ed McConnel, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Sondra Leah Fogley, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Roderick Lee Kite, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Case No. CRF–69–2386, for the offense of Unlawful Sale of a Stimulant. His punishment was fixed at five (5) years imprisonment and a fine of One Thousand Dollars ($1,000.00), and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, John McAuliff, a chemist for the Oklahoma State Bureau of Investigation, testified that he conducted a thin layer chromotography test on one of the tablets submitted to the laboratory for analysis on September 19, 1969 by Officer Burns. The test was positive for lysergic acid diethylamide, commonly known as LSD. He identified the exhibit by the laboratory number and by his initials.

John Kane testified that on September 18, 1969 he was working as an undercover officer for the Oklahoma City Police Department. At approximately 5:00 p. m. he had a telephone conversation with the defendant and asked him if he had any "acid" to sell. The defendant advised Kane that he did. At approximately 5:25 p. m., the defendant arrived at a residence on N.W. 16th Street where Kane was waiting. He and the defendant had a conversation concerning the quality and price of the LSD. Kane agreed to buy ten (10) tablets for Two Dollars and Fifty Cents ($2.50) per tablet. The defendant pulled a small box out of his pocket and said he only had seven (7) tablets with him. Kane gave the defendant the agreed amount of Twenty-five Dollars ($25.00) and the defendant promised to return with the remaining three tablets. At approximately 9:00 p. m. the defendant returned and delivered the three (3) tablets to Kane. After the defendant left, Kane went to a prearranged location and turned the tablets over to Detective Burns. He identified State's Exhibit One as the tablets he purchased from the defendant.

On cross-examination, Kane testified that prior to September 18 he made a "contract" with the defendant concerning purchasing fifty (50) tablets. He further testified that he did not have his police report with him and did not recall all the details of the prior transaction. He denied that the ten (10) tablets he purchased from the defendant on the 18th constituted part of the fifty (50) tablet contract.

Detective Burns testified that he was working surveillance on Officer Kane on the day in question. At about 5:25 p. m., the defendant and another subject arrived at a residence on N.W. 16th where Kane was waiting. The defendant returned to the residence again at about 9:00 p. m. A short time later, he met Officer Kane at a prearranged location and received ten (10) tablets from him. He identified State's

Exhibit One as the tablets which he received from Officer Kane and subsequently delivered to the State Bureau of Investigation Laboratory.

Steve Meador was called as a defense witness and testified that he was a court reporter for Judge Van Meter. He testified that he transcribed the evidence given by Officer Kane in a prior trial wherein the defendant was convicted of Illegal Sale of a Stimulant. At the prior trial, Officer Kane testified that on September 17, at approximately 1:45 p. m. he went to the parking lot of Threads, Inc. with David O'Brien. O'Brien went into the building and returned to the parking lot with the defendant. He had a conversation with the defendant concerning purchasing LSD. He advised the defendant that he would like to buy fifty (50) tablets and they discussed the price, finally settling on Two Dollars and Fifty Cents ($2.50) per tablet. The defendant gave him thirty-one (31) tablets and Kane gave the defendant Fifty Dollars ($50.00). The defendant advised him that he would be able to pick up "the rest of it" at a later date. On cross-examination, he testified that he told the defendant he wanted to buy One Hundred Dollars ($100.00) of LSD and they agreed on the price of Two Dollars and Fifty Cents ($2.50) per tablet. The defendant advised O'Brien to give Kane his "acid" and stated that he could get some more. He gave the defendant Fifty Dollars ($50.00) and told him that he would come back later and pick up the rest of it.

The defendant testified that he was convicted in the prior case and received a five-year sentence. He testified that he first met the defendant on the 17th behind the clothing store where he worked. Kane told him that he wanted to purchase fifty (50) LSD tablets and they agreed on the price of Two Dollars and Fifty Cents ($2.50) per tablet. He obtained thirty-one (31) tablets from O'Brien and gave them to Kane, receiving Fifty Dollars ($50.00) in return. Later that day, he delivered nine more tablets to Kane and received Fifty Dollars ($50.00). The following day, he delivered the remaining ten (10) tablets to Kane and received Twenty-five Dollars ($25.00). He testified that he had not sold any LSD prior to September 17 and that the tablets he delivered to Kane were obtained from other persons.

Officer Kane was called in rebuttal and testified that on the 17th he advised the defendant that he wanted to buy One Hundred Dollars ($100.00) worth of tablets and that he was paying Two Dollars ($2.00) a tablet. The defendant advised him that LSD was selling for Three Dollars ($3.00) a tablet on the street and they compromised on the price of Two Dollars and Fifty Cents $2.50). He obtained the thirty-one tablets from the defendant and the defendant told him to come back at 4:00 and he would give him the remaining nine tablets. He returned to the shop that afternoon, gave the defendant Fifty Dollars and received nine tablets. The defendant advised him that he was going to Aspen, Colorado later that week to get some LSD and that he might be able to sell it to him cheaper in the future. On September 18, the defendant advised him that the tablets he delivered were "real good" because "he had a good name for selling good acid and that he wasn't going to do anything to destroy that name." (Tr. 109)

In surrebuttal, the defendant testified that he did not tell Officer Kane that he was going to Aspen to buy LSD but rather stated that he had a friend who was going.

■ The first proposition asserts that the trial court erred in refusing to rule as a matter of law that defendant was being subjected to double jeopardy. We are of the opinion that the trial court properly refused to rule that the defendant was subjected to double jeopardy as a matter of law. Officer Kane testified that there were two separate distinct sales of LSD wherein the defendant testified there was only one. The conflicting testimony raised a question of fact for the jury and was properly submitted to them. In West v.

State, 24 Okl.Cr. 225, 217 P. 1067, we stated in the first paragraph of the Syllabus:

"Upon the interposing of a plea of former jeopardy in the trial of any criminal case, a question of fact ordinarily arises, which should be submitted to the jury for determination, unless the court is satisfied as a matter of law that the plea interposed is insufficient to raise the question of former jeopardy. In such event it is not error for the court to refuse to submit said plea to the jury if as a question of law it is insufficient."

In the instant case, the trial court informed the jury that the defendant asserted the defense of former jeopardy prior to the introduction of the defendant's evidence. The trial court further properly instructed the jury as to former jeopardy. We have previously held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

■ The second proposition contends that the trial court erred by failing to submit to the jury the proper verdict forms. The defendant argues that because he entered formal pleas of "not guilty" and "former conviction" the trial court erred in not submitting to the jury, verdict forms which provided for a verdict of "for the State" or "for the defendant" as provided in 22 O.S., § 914. The defendant cites as authority, Hourigan v. State, 38 Okl.Cr. 11, 258 P. 1057 (2nd case), wherein the Court stated in the second paragraph of the Syllabus:

"Where a defendant enters a plea of 'not guilty' and also a plea of 'former conviction' of the same offense, and there is evidence raising a question of fact in support of such plea, he is entitled to

have both pleas passed upon by the jury before judgment can properly be pronounced and entered, and a judgment of conviction will be reversed if the jury fails to find a verdict on the latter plea, unless the record shows that it was waived or withdrawn."

In the instant case, the record does not reflect that the defendant requested the court to submit verdict forms to the jury on the issue of "former conviction." The record reflects that the defendant did not object to the verdict form furnished the jury. The court instructed the jury as follows:

"* * * Should you determine from the evidence in this case that the same evidence necessarily will sustain a conviction or acquittal as to both of these informations or entertain a reasonable doubt thereof, then and in that event you should find for the defendant and acquit him. However, should you find that the offense charged in each information is a separate and distinct criminal act, transaction or omission and the evidence of one will not necessarily sustain the other, then and in that event, you should find for the state and against the defendant on the defense raised of a former conviction."

The defendant's failure to request jury verdict forms as to the issue of former conviction and his failure to object to the verdict forms furnished by the court waives any error in the form of the verdict.

■■ The third proposition asserts that the trial court erred in refusing to grant defendant's motion for mistrial based on improper remarks by the prosecution. The record reflects that the Assistant District Attorney stated in his closing argument:

"* * * The Officers were doing their duty, don't get misled by entrapment or trapped. When he comes limping over there with those pills and he takes that money, he's trapped all right, but it's not entrapment. Entrapment is where you more or less take the trap to

the person and he's kinda of a innocent victim, but if the rat goes into the trap, he's trapped." (Tr. 122)

The defendant immediately objected to said remarks and requested a mistrial, whereupon the court stated:

"I'll over-rule your motion for a mistrial. I think the jury heard the statement in the light that it was made in. I don't think it made reference to your client." (Tr. 123)

We concur with the trial court's finding that the prosecuting attorney did not refer to the defendant as a "rat" but simply was using the term "rat" in his illustration of entrapment. We have previously held that for remarks of a prosecuting attorney to constitute reversible error, they must be flagrant and of such a nature as to be prejudicial to the defendant. Pickens v. State, Okl.Cr., 450 P.2d 837.

The final proposition contends that the trial court erred in allowing an "evidentiary harpoon" by Witness Kane in rebuttal. The defendant argues that Officer Kane's testimony concerning the defendant's statement that he was going to Denver to buy a quantity of 1600 LSD tablets "was nothing other than 'evidentiary harpoon', for which this Court has previously expressed a definite distaste." The record reflects that during his rebuttal testimony, Officer Kane testified as follows:

"[By Mr. Hoch] Q. All right, now then, Officer Kane, I'll ask you if you had a conversation with Mr. Kite concerning his dealing in acid, in selling to other people?

"A. Yes, sir, we had a conversation while we were back in this one particular room and I asked him if he could sell any more acid at a cheaper price, less than $2.50, and he advised me that he might be able to. That he was going to Aspen, Colorado, I believe it was Friday that he said he was going and that he would able [sic] to score or to buy acid for about $1.00 a tablet and that he could bring back $1600.00 worth of acid to sell in the City.

"Q. All right. Now, I'll ask you Officer, if you had a conversation with Mr. Kite concerning the quality of this particular acid that you were buying on the 18th?

"BY MR. McCONNEL: I object to this, your honor, as not being the best rebuttal testimony. There was nothing in the defense about the quality." (Tr. 107–108)

It would thus appear that the only objection by the defendant was to the officer's testimony concerning the quality of the acid and not the testimony concerning the trip to Aspen. In Hampton v. State, Okl. Cr., 407 P.2d 210, we stated in the first and second paragraphs of the Syllabus:

"It is the duty of counsel to raise, at proper time and in proper manner, all objections to the proceedings and save proper exceptions. When this is not done, they are treated as waived, and there are few exceptions to this rule.

"When evidence is admitted without objection, it is too late to complain about the introduction upon appeal."

Although this proposition is improperly before this Court, we observe that the evidence was admissible to rebut the defendant's testimony that he had never sold any LSD before in his life and that he was entrapped. In Watson v. State, Okl.Cr., 382 P.2d 449, we stated:

"With such a plea, it is incumbent upon the defendant to introduce some evidence tending to establish the same, and the State has the right to extend its cross-examination to show that defendant was not the type of person who would have needed to be entrapped. * * *"

The judgment and sentence is, accordingly, Affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissents).

I respectfully dissent to this decision. Defendant's jeopardy claim is based on the

argument that there was only one agreement entered into on September 17th for defendant to sell Kane a set quantity of LSD for a set price, and that the sale was completed with the delivery in two installments, one of 31 tablets on September 17th, and the final delivery of 10 tablets on the following day. Defendant contends a single sale to one customer cannot be divided to allow two separate prosecutions simply because the agreed amount of LSD was delivered in two installments. Since defendant was convicted and sentenced for sale of LSD on September 17th to Kane, defendant asserts that conviction is a jeopardy bar to a separate prosecution and conviction for the completion of the sale on September 18th. I believe defendant's contention is correct.

The evidence establishes that on September 17, 1969, John Kane, an undercover police officer, went with an individual named O'Brien to "Threads, Inc." in Oklahoma City. O'Brien went into Threads, Inc. and returned shortly with the defendant. The defendant got into O'Brien's automobile with O'Brien standing by the door. Kane and the defendant then had a conversation concerning buying LSD, discussing quantity and prices. Kane told defendant he "wanted to buy one hundred dollars ($100) worth" and they agreed upon a price of $2.50 per tablet. Defendant only had 31 tablets with him at that time, but told Kane "he could get some more" to complete the purchase of 40 tablets for $100, as requested by Kane. Kane then gave defendant $50 for the 31 tablets, and it was their "agreement" that Kane would come back "to pick up the rest of the purchase." Kane stated: "I'm not sure exactly how much more, sir, I was supposed to pick up." The next day, on September 18th, 1969, Kane called the defendant at Threads, Inc., and told him to come over to 1304 N.W. 16th about 5:30 with the remainder of the purchase. According to Kane, defendant arrived and gave Kane seven tablets with the understanding that he would be back in a little while with the remaining tablets.

At approximately 9:00 that evening defendant returned and gave Kane three tablets.

The law does not permit two prosecutions and double punishment for a single criminal offense. Oklahoma Constitution, Art. II, § 21. 22 O.S.1971, § 14. 21 O.S. 1971, § 11. "A series of criminal charges cannot, under our system of jurisprudence, be based upon the same criminal act or transaction; a single criminal act cannot be split up or subdivided into two or more distinct offenses and prosecuted as such." Thus the "state will not be permitted to split or divide up an offense into divers parts and punish each moiety." Estep v. State, 11 Okl.Cr. 103, 108, 143 P. 64, 66 (1914); Hochderffer v. State, 34 Okl.Cr. 215, 218, 245 P. 902 (1926); Heldenbrand v. Mills, Okl.Cr., 476 P.2d 375, 376 (1970). Where "a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." Ex parte Nielsen, 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889). If a person is convicted for an unlawful sale, "it must, in a certain sense, be considered as a merger of all the distinct acts of sale." Hochderffer v. State, supra.

Thus the question before this Court is whether there was one sale or two distinct sales.

The California Supreme Court case of In re Johnson, 65 Cal.2d 393, 54 Cal.Rptr. 873, 420 P.2d 393 (1966), is instructive on this issue. In that case defendant and an undercover officer met at 9:00 P.M. and discussed a sale of heroin for $30 a spoon (approximately 2 grams). The officer asked for five spoons. Defendant then offered to sell an additional five spoons for a total cost of $250 for the ten spoons. Defendant then delivered five spoons to the officer. The officer later phoned defendant and arranged a second meeting at 11:00 P.M. where defendant delivered five more spoons. The defendant was convict-

ed for two sales of heroin, one at 9:00 P. M. and one at 11:00 P.M. On appeal the court held there was but a single transaction, allowing only one conviction.

The California Supreme Court held:

"Although the number of deliveries may be relevant in determining the number of crimes committed, it is not conclusive. The entire transaction must be considered. To find that the two deliveries in this case constituted separate crimes, it would be necessary to attach independent criminal significance to the bifurcation of the delivery, a circumstance that had nothing to do with petitioner's culpability. Since one price was agreed upon at the outset and since petitioner intended from the outset to sell Robertson either ten spoons for $250 or five spoons for $150, he intended to make but one sale. Moreover, that sale was not carried out over such an extended period of time that the bifurcation of delivery posed separate, independent dangers. Under these circumstances, no legitimate penal purpose would be served . . . to permit the prosecutor to carve this transaction into two crimes.

"The basic principle that forbids multiple punishment for one criminal act . . . precludes infliction of more than one punishment for the present series of acts directed toward one criminal objective, the single sale of heroin to one customer."

From a review of the facts in this case, it is apparent to me that there was one agreement between Kane and the defendant to sell a quantity of LSD tablets at the price of $2.50 a tablet for $100's worth of LSD, or a total of approximately 40 tablets. This agreement was entered into on September 17th in front of Threads, Inc. Since at that time the defendant had with him only 31 tablets, it was agreed that the remaining tablets, to complete the purchase, would be exchanged the following day. On the next day, September 18th, defendant delivered the balance of the tablets in accordance with their agreement. This

was but one transaction, a sale to one customer for a given amount at a set price, completed with three meetings within 32 hours. As I view this evidence, it will support but one conviction for an unlawful sale of LSD. Consequently, I believe the judgment and sentence in the instant case should be reversed and remanded. Therefore, I must dissent to this decision.