Edwin Edgar JONES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17290.

Court of Criminal Appeals of Oklahoma.

May 2, 1973.

Rehearing Denied May 23, 1973.

Charles V. Foor, McAlester, for appellant.

Larry Derryberry, Atty. Gen., and Raymond Naifeh, Asst. Atty. Gen., and Charles F. Alden, III, Legal Intern, for appellee.

## OPINION

### PER CURIAM:

Appellant, Edwin Edgar Jones, hereinafter referred to as defendant, was conjointly charged with William B. Franklin, with two charges of Murder and one of Shooting With Intent To Kill, in the District Court of McIntosh County, Oklahoma. Defendant was charged in Case No. F–71–105 with Murder, in Case No. F–71–106 with Murder, and in Case No. F–71–173 with Shooting With Intent To Kill. A severance was granted defendant on July 30, 1971, and by agreement of the parties, the cases were consolidated for trial. At defendant's request, venue was changed to Pittsburg County, to insure a fair and impartial trial. Trial was had on August 16, 1971, in the District Court of Pittsburg County, wherein defendant was convicted on two charges of Murder and on one charge of Assault and Battery With a Deadly Weapon With Intent To Kill. Defendant was sentenced to serve two life terms and one term of twenty (20) years imprisonment, respectively. The court provided for the sentences to run consecutively. A timely appeal has been perfected to this Court.

Briefly stated the facts are that defendant herein and his co-defendant Franklin, were cousins; and at the time of the incident, out of which these charges arose, defendant was on leave from the Army. Co-defendant Franklin had been an electrician in Hominy, Oklahoma, and had done some undercover narcotics work for the sheriff's department. After discovering that his identity was known, in relation to the narcotics work, Franklin decided to leave town and asked defendant if he could return to Texas with him in order to share his off-base apartment. Defendant agreed, so he and Franklin loaded Franklin's belongings, including his weapons, into defendant's car.

On the return trip to Texas, February 17, 1971, defendant and Franklin stopped at Fountain Head State Park. W. L. Pickens was a Game Ranger at the park; and on the day in question, he heard some shots in the park area and went immediately to investigate. After coming upon the defendant and Franklin, he observed Franklin's firearms in defendant's car; so he placed both individuals under arrest. The weapons were transferred to Ranger Pickens' vehicle; and upon Pickens' orders, Franklin got into the Ranger's car and defendant followed in his own car.

Pickens, Franklin, and the defendant drove to the airstrip where they met Leo Newton, the Park Superintendent. After approximately thirty minutes, the Highway Patrol was called. Bill Walker, a Highway Patrolman, responded to the call. Upon arriving at the location of the Superintendent and Ranger, the officers decided that defendant and Franklin would be charged with Possession of Weapons in a State Park.

Patrolman Walker searched the defendant and called a wrecker to tow defendant's car in for safekeeping. About that time, the shooting started. The facts concerning what happened are in dispute, and especially as to how and why the incidents occurred.

Ranger Pickens testified that Franklin pulled a gun and shot Officer Walker; that he ducked behind defendant's car and then heard about three or four more shots. It was later determined that Pickens was shot in the head three times. He related the next thing he remembered was hearing a motorcycle, and a boy's voice asking, "What happened to my daddy?"

Benny McCoy, another Oklahoma Highway Patrolman, testified that when he arrived at the scene, he observed Patrolman Walker lying on the ground and that he was dead. He also saw Park Superintendent Leo Newton lying on the ground, and that he too was dead. He stated that he then saw W. L. Pickens and observed that he was alive, but bleeding. Patrolman McCoy stated that Mr. Pickens answered affirmatively, by nodding his head, his questions as to the color of the automobile and whether it had been two men. He then testified that he recovered from the scene five or six cartridge hulls marked .380 caliber and two or three spent .22 hulls.

Frank Brady, an agent for the Oklahoma State Bureau of Investigation, testified that he had traveled to McAlester to pick up the bullets removed from the bodies of Trooper Walker and Leo Newton. He stated that he delivered the evidence to Ray Lambert, who was the firearms examiner for the State Crime Bureau.

Jerry Backus, an Oklahoma Highway Patrolman, testified that the defendant and Franklin were apprehended on February 21, 1971, and were taken to the Eufaula jail. He stated that he had advised defendant of his *Miranda* rights and that defendant acknowledged understanding them. He further said that defendant volunteered to talk about anything either prior to the ordeal, or subsequent thereto. Upon arrival at the jail, defendant was again advised of his rights and he agreed to take the officers back to his encampment where the guns had been hidden. Upon arriving back at the encampment, several weapons and a large amount of ammunition were recovered.

Ray Lambert, firearms examiner for the Oklahoma State Bureau of Investigation, testified that in his opinion, the bullets removed from the bodies of Patrolman Walker and Park Superintendent Leo Newton had been fired from the .22 caliber Mosburg rifle and the .380 semi-automatic pistol; and that the expended shells found at the scene of the crime had also been fired in the same weapon.

Co-defendant, William B. Franklin, testified in defendant's behalf that he and defendant had stopped in the State Park to eat lunch. He stated that Pickens came up to them, inquired as to whether they had heard any shooting, and upon viewing Franklin's weapons in the rear seat of the car, Pickens placed them under arrest. Franklin entered Pickens' car and defendant followed in his own car to the airstrip where the trio met Park Superintendent Leo Newton. Franklin stated that after approximately thirty minutes, the highway patrol was called, that upon the patrolman's arrival and after a brief discussion, the highway patrolman searched defendant Jones.

Franklin stated that he was wearing a weapon in a shoulder holster and that he felt that he should turn the weapon over to Mr. Newton. He related that upon taking the weapon off and attempting to hand it to him, Newton screamed, "Look out, he's got a gun." He then testified hearing a shot and seeing Trooper Walker firing at him. He further stated that at that point, he "pretty well came apart," and started returning the trooper's fire; that the Trooper dove behind a car, but continued to fire. Franklin continued that as he fell, he looked to his left and saw Newton come into view, so he fired at him; that he got up and went over to the area where the Trooper was and fired at him again as the Trooper started running around the car. Franklin said that shot knocked the Trooper down, so he took a couple of steps toward the Trooper and as the Trooper raised up to fire, he shot him again. Franklin said that he was not sure Pickens had been shot. He further testified that defendant Jones did not do any of the shooting; and that defendant tried to talk him into giving himself up, during the ensuing period following the shooting.

Defendant testified in his own behalf to the effect that when the shooting started, he dove for the ground. Defendant stated

that he saw co-defendant Franklin shoot Trooper Walker in the head and also saw him shoot Newton. He testified to being in a state of disbelief and said that Franklin kept "hollerin" for him to get into the car, so he did and they left the area. Defendant stated that after they abandoned the car and found a place to hide, they unloaded the weapons and hid them under some brush, so that Franklin could not shoot anyone else. Defendant testified that he talked Franklin into giving himself up on Sunday morning and that they walked to the highway, where they were arrested, advised of their rights, and taken to the Eufaula jail.

Sergeant Mickey Scott, the defendant's military supervisor, testified on behalf of the defendant as a character witness. He stated that defendant's general character and reputation as a peaceable law abiding citizen was, in his opinion, good. On cross-examination, the witness was questioned as to whether he would change his opinion if he had heard that the defendant had committed certain acts, to which the witness testified that under the circumstances as presented, he would not change his opinion of the defendant.

The State then put on rebuttal testimony which showed that the deceased Trooper Walker had been an excellent marksman and above average in ability to draw and shoot his weapon.

■ Defendant first complains that the trial court erred when it instructed the jury that it could consider the fact that the co-defendant Franklin was in the possession of a firearm, after former conviction of a felony, as that fact tended to show the motive of the defendant Jones in this case. The Court further instructed that such facts could only be considered by the jury if it found that Jones knew of the previous conviction. Particularly, defendant asserts that the fact that Franklin had received a pardon erased the former conviction, and was, therefore, not to be considered. Various cases and statutes are cited in support of this position.

The thrust of the argument is that since co-defendant Franklin had been previously given a full pardon, the pardon effectively obliterated the prior conviction. With this contention, we cannot agree. In Kellogg v. State, Okl.Cr., 504 P.2d 440 (1972), this Court held that while jurisdictions differ as to the effect of a pardon, as the pardon by the executive power does not blot out the solemn act of the judicial branch of the government. It is apparent, therefore, that since Franklin's prior conviction had not been obliterated, the instruction given in relation thereto, was valid.

The instruction complained of was the court's Instruction No. 31, which was as follows:

"You are instructed Ladies and Gentlemen, in connection with the conjoint charges involved, charging Franklin and Jones committed the three offenses alleged, the carrying of firearms after former conviction of a felony is in and of itself an offense punishable by imprisonment. Since Franklin as a witness has admitted his prior conviction, on the question of conjointly acting and as to his possible motive in the shooting *you may consider whether or not the defendant Jones had prior knowledge and knew of co-defendant' Franklin being in the commission of a felony at the particular time of the alleged crimes.*

"It is for you to determine whether or not this has any bearing upon your finding of the charge they conjointly acted as they were alleged to have acted on February 17, 1971." (Emphasis added)

The entire instruction given by the court, therefore, was a correct statement of the law. The court limited the use of the evidence to motive, which is a well-recognized exception to the "other offense" rule. Moulton v. State, Okl.Cr., 476 P.2d 366; Johnson v. State, Okl.Cr., 478 P.2d 969 (1971). Further, the court correctly instructed the jury that the prior conviction of Franklin could not be considered at all unless the jury first found that Jones knew about the same. Jones' knowledge in

this regard would certainly tend to establish motive on his part to protect his cousin, Franklin. We therefore deny defendant's first proposition of error.

Defendant's second proposition asserts that the jury was allowed to return to hear again the testimony of two State's witnesses. Further, defendant complains that the jury heard only one side of the testimony of the two witnesses, specifically the direct examination by the State, and, that all proceedings surrounding the same were done outside the presence of defense counsel. Defendant notes, however, that the record is silent with respect to counsel's absence, and as to what portions, if any, of the testimony the jury heard.

■ In view of the fact that there is no evidence in the record to substantiate the allegation that only one side of the testimony of the witnesses was heard, the complaint is not sufficient to consider. The record shows that no objection was taken by counsel to any of the complained of proceedings. In Lung v. State, Okl.Cr., 420 P.2d 158 (1966), this Court addressed itself to the necessity of an objection in order to preserve a question of law on appeal. At page 160, this Court said:

"* * * This Court has consistently held that in order to preserve a question of law, the attorney must present objections and give the trial court an opportunity to pass upon the admissibility of evidence. In Hampton v. State, Okl.Cr., 407 P.2d 210, this Court said in the first syllabus:

'It is the duty of counsel to raise, at proper time and in proper manner, all objections to the *proceedings* and save proper exceptions. When this is not done,. they are treated as waived, and there are few exceptions to this rule.'"
(Emphasis added)

■ Defendant's third proposition asserts error was committed, when the jury was qualified for the death penalty. While admitting that this question is now moot considering the United States Supreme Court's holding that the death penalty is cruel and unusual punishment. See Furman v. Georgia, Jackson v. Georgia, and Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. Insofar as defendant was assessed life imprisonment, this proposition is without merit. Likewise, defendant does not support this proposition with any authority.

■ Defendant's fourth proposition complains that the court below erroneously allowed the prosecutor to cross-examine a defense character witness concerning the witness's knowledge of misconduct on the part of the defendant which is not the subject of any conviction. In support of his position, counsel relies upon the case of Miller v. State, Okl.Cr., 418 P.2d 220 (1966). The State concedes the applicability of the *Miller* case, however the State contends that the trial judge complied exactly with the terms of the *Miller* case.

In *Miller,* supra, the defendant had been convicted of the crime of Lewd Molestation of a Minor Child. On appeal, the defendant asserted that the prosecutor was guilty of misconduct in his manner of cross-examination of a defense character witness. This Court rejected the contention, and, in an exhaustive opinion, set forth clearly all of the law concerning the issue.

In an earlier portion of the opinion, this Court discussed the types of conduct about which inquiry may be had:

"* * * [T]he great weight of authority in Oklahoma to the contrary, holding that a witness testifying to the good reputation or character of a defendant in a criminal prosecution may be interrogated on cross-examination with respect to rumors or reports of particular acts imputed to the defendant, and as to what the witness has heard of specific charges of misconduct made against the defendant." (Citations omitted)

With respect to the nature and extent of such cross-examination, this Court said at page 224:

"In the cross-examination of a witness called to testify to the defendant's good reputation as a law-abiding citizen, it is permissible to ask the witness on cross-examination if he had heard of various specific acts of the defendant inconsistent with such reputation. (Citations ommitted)

"It is improper for the cross-examiner to inquire of a witness concerning alleged acts of the defendant which are creatures of the examiner's imagination and which did not occur, for the purpose of leaving the impression with the jury that this reputation is bad. The examiner should act in the utmost good faith and should be severely reprimanded by the trial court if found guilty of bad faith * * *."

The test to be applied in a situation such as the one in the case at bar is as to the good faith of the cross-examiner in asking his questions. To that question, this Court spoke as follows:

"To insure the good faith of the questioning of the state, and to determine whether to allow the cross-examination, it has been set out in the case of State v. Steensen (1955), 35 N.J.Super. 103, 113 A.2d 203, that the trial court should conduct a preliminary inquiry out of the presence of the jury and the trial judge should satisfy himself:

'(1) [T]hat there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction, or other pertinent misconduct of the defendant;

'(2) [T]hat a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;

'(3) [T]hat neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;

'(4) [T]hat the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and

'(5) [T]hat the examination will be conducted in the proper form, that is: "Have you heard," etc., not "Do you know," etc. * * *

"And if the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose either at the conclusion thereof or in the charge.'"

In the instant case, the trial court did conduct a hearing outside the presence of the jury, prior to cross-examination of the witness in court. We have reviewed the questions and answers given, and find that the trial court did not commit error in this respect.

█ Defendant's fifth, seventh and eighth propositions are not supported by the citations of authority. We have previously held that it is necessary for defendant not only to assert error, but to support his contentions by citations and authority. When this is not done and it is apparent that the defendant has not been deprived of any fundamental rights, this Court has refused to search the books for authority to support the mere assertion that the trial court was in error. Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969). In view of the foregoing and in light of a very careful scrutiny of the record before us, we are of the considered opinion that defendant's unsupported allegations of error do not reflect a deprivation of any fundamental right. We commend the trial judge in his extreme caution to safeguard defendant's fair and impartial trial.

█ Defendant's final proposition of error, properly supported by authority, urges error of the trial court in allowing the State to make prejudicial remarks and in-

ferences on closing statement. The record indicates that the defendant did not at any time during argument on behalf of the State object to any portion thereof. In Walters v. State, Okl.Cr., 455 P.2d 702 (1969), we stated:

"'* * * [I]f counsel wishes to preserve in the record alleged errors committed during the closing argument of the State, * * *, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement * * *. In the event counsel for the defendant considers the remarks so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error, counsel for defendants should move for a mistrial and preserve this in his Motion for a New Trial.'"

For all of the reasons set forth above, we are of the opinion that the defendant had a fair trial and that it was free of any error which would justify modification or reversal. Judgment and sentence is affirmed.